Points decided.

CARMEN S. DE BERNAL AND JOSÉ DE JESUS BER- $\begin{smallmatrix}36 & 135 \\ 145 & 767\end{smallmatrix}$
NAL v. MICHAEL LYNCH, LEOPOLD GREGET,
ANDRÉ BERGEROTS, ISADORE BERNAMAYOUS,
EBENEZER MORRELL, AND LOUIS HAMEL.

JURISDICTION OF INFERIOR TRIBUNALS—COLLATERAL ATTACK.—Where an inferior tribunal, as the Board of United States Land Commissioners, has once acquired jurisdiction of a matter, its subsequent proceedings therein cannot be collaterally questioned for mere error or irregularity.

DECREE OF CONFIRMATION OF MEXICAN GRANT—TITLE UNDER VAN NESS ORDI-NANCE.—Where a Mexican grant to land situated within the limits of the City and County of San Francisco was confirmed by the Board of United States Land Commissioners, and, together with the survey thereof, was, in 1863, affirmed by the United States District Court, and, on appeal, said survey was confirmed by the Supreme Court of the United States : Held, that under the provisions of the Act of Congress approved June 14th, 1860, as against those claiming under the party who contested said survey in the District Court and on said appeal, and who claimed title thereto under the Van Ness Ordinance, the successors in interest of the grantee of said land acquired thereby such title thereto, without a patent from the United States, as to maintain an action of ejectment therefor.

IDEM.—In such case, the decree confirming the survey was an adjudication that said land mentioned in the decree confirming the claim was properly located and correctly surveyed ; and the contestant of said survey having made himself a party to the proceeding for its confirmation, neither he nor those claiming under him can be permitted to collaterally question the decree.

IDEM.—Conceding that said contestant acquired to said land, by virtue of the Van Ness Ordinance, all the title which the City of San Francisco held to it as pueblo land, yet, as under said Act of Congress of 1860 said decree of confirma-tion was made the equivalent of a patent issued by the United States, the con-firmee thereby acquired the title of the United States, and his title so acquired was unaffected by the Act of Congress of 1864, entitled "An Act to expedite the settlement of titles to lands in the State of California." The claim of the con-firmee was, by the decree of confirmation, established as a bona fide claim, and was therefore within the protection accorded to bona fide claims by the fifth section of said last named Act.

IDEM—TITLE BY MEXICAN GRANT AS AGAINST A PUEBLO TITLE.—It does not follow, because the inchoate title of the pueblo of which said land was a part was older than the Mexican grant under which said confirmee claimed the same, that the former was the better title. The decree by which the title of the City of San Francisco was confirmed to said pueblo expressly excepted Mexican grants from its operation ; moreover, the exercise of the power by the Governors of California under the Mexican Government to grant lands within pueblos has been so long acquiesced in, and so many titles depend upon a recognition of the power, that it ought not now to be drawn in question, except upon the most cogent consider-ations.

TAX SALE—WHEN VOID.—A purchase of land, at a sale of the same for taxes, by the agent of one who was in possession thereof, either by himself or his ten-ants, does not pass or otherwise affect the title to such land.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action of ejectment to recover a tract of land at the Mission Dolores, in the City and County of San Francisco. The original answer was a general denial of the allegations of the complaint; also set up a tax title in Isaac N. Thorne, as an outstanding title. The case was tried by the Court, and on the trial most of the facts were agreed, and, as appears from the findings of the Court, were substantially as follows:

1st. That the lot in contest, consisting of nearly six acres of land, lies within that portion of the City of San Francisco which is embraced within the provisions of the Van Ness Ordinance, and within the charter line of 1851.

2d. That the plaintiffs, (who are the widow and son of José Cornelio Bernal, deceased,) in March, 1853, presented their petition to the Board of United States Land Commissioners, for the confirmation of their title; in which petition they allege that the lot was granted, in 1834, by Governor Figueroa, to said José Cornelio Bernal; and such proceedings were had, that the claim was confirmed, in 1854, by the Land Commission, and on appeal to the United States District Court, it was again confirmed, after which the United States declined to prosecute a further appeal, and the decree of confirmation became final.

3d. That thereupon the Surveyor General made a final official survey of the lot, under the decree, in April, 1861; that one Theodore Dehon filed in the United States District Court a petition for an order directing said survey to be returned into Court for revision, in which petition he avers that he is in possession of the property, claiming title under conveyance from Bishop Alemany, to whom the land had been duly patented, and that the survey erroneously includes this land; that the order was made as prayed for, and the survey was returned into Court for review.

4th. That said Dehon died in July, 1861, leaving a will

appointing William Dehon executor, which, in 1863, was probated in San Francisco, and the defendant Lynch appointed administrator with the will annexed.

5th. That in September, 1861, the said William Dehon, as executor of Theodore Dehon, filed exceptions to the survey; that said William Dehon, as executor, and said defendant Lynch, on behalf of said estate, employed counsel to appear before said Court, to contest said survey, and such counsel did so appear, and the exceptions to the survey were tried and litigated in that Court; that the Court ordered the survey to be so modified as to exclude the land held by Dehon under the Bishop, but approved the survey as to the remainder of the land, and the survey, being thus modified, was finally approved by the Court; that in August, 1863, the said William Dehon, executor, on behalf of the estate, appealed the case to the Supreme Court of the United States, which Court affirmed the decree of the District Court; the case being the same reported in 3 Wallace, 774.

6th. That said Theodore Dehon, for a long time prior and up to the time of his death, in 1861, was in possession of the premises in contest, claiming to be the owner thereof; that from and after the year 1859 the defendant Lynch was in possession as the agent of the said Dehon, and since his appointment as administrator with the will annexed, has continuously kept such possession, and yet holds it as the property of said estate, and the other defendants are his tenants; that from, on, and before the first day of January, 1855, and until long after the 20th day of June, 1855, the said Theodore Dehon, and those under whom he claims, had the actual possession of said premises, having the same inclosed with a substantial fence, and cultivating the same.

7th. That on the trial of the plaintiffs' claim for confirmation before the Land Commission, and in the District Court, so far as disclosed by the evidence remaining of record in the hands of the Clerk of said Court, no documentary evidence of any character was offered or produced in support of

the plaintiffs' claim for confirmation, and the only evidence offered or produced in support of said claim were the depositions of M. G. Vallejo and José Castro, copies of which are contained in the findings.

8th. That the premises in dispute were duly assessed for taxes to the estate of Dehon in 1865–6; that the taxes being unpaid and delinquent, the premises were sold for taxes, and struck off to I. N. Thorne, and there being no redemption, were conveyed to him by a regular tax deed. That said purchase, though made in the name of Thorne, was in fact made for the use and benefit of Lynch, as administrator of Dehon; and at the request of Lynch, and with money furnished by him, the tax deed was delivered by the Tax Collector to Lynch, and was never delivered to Thorne; and that Thorne holds the title in secret trust for Lynch.

The Court found as conclusions of law:

1st. That the defendants are estopped by the decree of confirmation and final survey from denying or questioning plaintiffs' title.

2d. That the defendants are estopped by the proceedings in the District and Supreme Courts of the United States from again litigating the correctness of the survey and location of said lands; in accordance with which judgment passed for the plaintiffs. The defendants appealed from the judgment and from an order denying their motion for a new trial.

*Eugene Casserly,* for Appellants.

The Court erred in holding as matter of law that the defendants are estopped, by the decree of confirmation and survey, from questioning the plaintiffs' title.

The Court finds as a fact that the defendants had the actual possession by inclosure and cultivation of the premises in contest on and prior to January 1st, 1855, and that such possession continued until long after June 20th, 1855, and, indeed, down to the present time. This brings the

defendants fully and fairly within the provisions of the Van
Ness Ordinance. By virtue of that ordinance the defendants
became vested with all the title which the city had in or to
this land. Having thus succeeded to the title of the city,
they are subrogated to all the rights of the city in respect to
this land. They can make whatever defense against an
adverse claim their grantor, the city, could have made. The
city had such a *status* as would have enabled her, as a defend-
ant in ejectment, to have gone behind the confirmation and
survey, and to have impeached the plaintiffs' alleged grant.
Section fifteen of the Act of Congress of March 3d, 1851,
establishing the Land Commission, provides that final decrees
of confirmation, or any patent thereunder, shall be conclu-
sive between the United States and the claimants only, and
" shall not affect the interests of third persons." (*Waterman*
v. *Smith*, 13 Cal. 373; *Biddle Boggs* v. *Merced Mining Co.*, 14
Cal. 362; *Leese* v. *Clark*, 18 Cal. 535; 20 Cal. 425; *Minturn*
v. *Brower*, 24 Cal. 644; *De Arguello* v. *Greer*, 26 Cal. 615.)

The result of these cases is, that to constitute "third per-
sons," within the meaning of the fifteenth section of the
Act, they must be persons who hold independent titles,
arising previous to the acquisition of the country. (*Leese* v.
*Clark*, 20 Cal. 425; *Beard* v. *Federy*, 3 Wallace, 493.)

The City of San Francisco held such a title. (*Hart* v.
*Burnett*, 15 Cal. 530; U. S. Stats. 1863–4, p. 332.)

The effect of the Act of Congress, cited to as a transfer of
title, is equivalent to a patent. (*Chouteau* v. *Eckert*, 2 How.
344; *Byrd* v. *Montgomery*, 6 Mo. 514; *Mackay* v. *Dillon*, 7
Mo. 10; *Grignon* v. *Astor*, 2 How. 319; *Guitard* v. *Stoddard*,
16 How. 494.)

The obvious intention of the Act was to transfer to those
entitled to the benefit of the Van Ness Ordinance whatever
title remained in the United States; but with the proviso,
which was intended to protect the *bona fide* claims of others,
(derived from Spain, Mexico, or the United States,) that noth-
ing in the Act, however, to "preclude a judicial examination
and adjustment thereof." This is precisely what we are

attempting to do with the Bernal claim—to ascertain whether it is *bona fide* claim or a fraud, and to examine it judicially.

The counsel for appellants further argued that upon the facts disclosed in the record it appeard that the Bernal claim was fraudulent and void.

*Barstow & Garber*, for Respondents.

Who are third persons within the meaning of the Act of Congress?

At the date of the cession of California by Mexico, the United States took the ceded territory subject to grants of portions thereof, already made by Mexico. Some of those grants had been made by segregating the lands granted from the public domain by actual measurement, the fixing of monuments to mark the boundaries, and the delivery of possession to the grantees; but most of them had been made of quantities of land to be located upon larger tracts by the Government, and at the time of the cession the locations had not yet been made. The location of these grants was a duty devolving on the sovereign, and could not be performed by the grantee. This duty was imposed on the United States as the successor of Mexico, and would have been binding on her by good faith and the law of nations in the absence of any stipulation to that effect in the treaty. The former grants were held under perfect titles, and Mexico neither had the right or claimed the power to cede to the United States any right thereto except her rights as sovereign. But the other class of grants, being made of no particular land, were designed to give the grantee the right to have measured off to him, at some subsequent time, from the public domain, the quantity mentioned therein. Had no cession been made, Mexico would have proceeded, as she was obligated, at the request of the grantees, to separate from the public lands the quantities called for by the grants in the particular localities named therein, and have given possession of the same to the grantees. Until a segregation took place, the

grantees held, in one sense, as tenants in common with the Government; and this relation was subsisting when the territory passed to the United States. To enable the Government to ascertain what lands belonged to it, and what had been conveyed by Mexico, and were held in private ownership, Congress passed the Act of March 3d, 1851, under which persons claiming lands by grant from Mexico, which required any action on the part of the Government to make them perfect, were called upon to present their claims within two years thereafter, and it provides that "all lands, the claims to which shall not have been presented to the Commissioners within two years after the date of the Act, shall be deemed, held, and considered as part of the public domain of the United States." But claims to lands which required no further acts on the part of the Mexican Government at the date of the treaty to vest in the grantees absolute titles, and concerning which no duty or obligation passed to the United States, are not comprehended in the Act. Persons holding lands under such titles are in a position to resist successfully any action of the United States Government in respect to them, and hold under titles which do not depend for their validity upon any action on the part of the latter Government. They are the *third persons* mentioned in the Act. ( *Waterman* v. *Smith,* 13 Cal. 420; *Leese* v. *Clark,* 20 Cal. 425; *Teschemacher* v. *Thompson,* 18 Cal. 27; *Minturn* v. *Brower,* 24 Cal. 669; *DeAryuello* v. *Greer,* 26 Cal. 626.)

The pueblo title of San Francisco was not a perfect title.

Grant that San Francisco was a "pueblo," and as such entitled to four square leagues of land, yet the same may be said of every grantee of an inchoate grant: each is entitled to the amount of land specified in his grant, but it does not follow that he has a perfect title to it. It was never claimed that any particular four leagues, as "the pueblo," belonged to the city. The decree of the Circuit Court confirming the claim describes the land confirmed as "a tract situated in the County of San Francisco, and embracing so much of the extreme upper portion of the peninsula above ordinary high

water mark, on which the City of San Francisco is situated, as will contain an area of four square leagues; said tract being bounded on the north and east by the Bay of San Francisco, on the west by the Pacific Ocean, and on the south by a due east and west line drawn so as to include the area aforesaid." (See, also, *Thornton* v. *Mahoney*, 24 Cal. 579; *United States* v. *Fossat*, 20 How. 426; *Fremont* v. *United States*, 17 How. 558; *Estrada* v. *Murphy*, 19 Cal. 248; *Steinbach* v. *Moore*, 30 Cal. 498; *Seale* v. *Ford*, 29 Cal. 107.)

By the Acts of Congress of July 1st, 1864, and March 8th, 1866, the Government of the United States relinquished all its interest in and right of control over the lands therein described, while the Van Ness Ordinance provides only for the relinquishment of the title of the City of San Francisco to the lands therein described, and vests the city's title in the persons in the actual possession at the times named therein, or if interrupted by a trespasser, in the person who should be able to recover possession by legal process. The plaintiffs are endeavoring to recover that possession, and the ordinance is sought to be used to defeat them in a way not contemplated by its provisions.

The Court found in this case that the defendant Lynch, on behalf of the estate of Dehon, filed exceptions to the survey as made by the Surveyor General, and at his instance the same was returned into Court for correction. That on the hearing he appeared by counsel and contested the survey, and the correctness of the same was fully tried and litigated. These facts bring the case clearly within *Treadway* v. *Semple*, 28 Cal. 552, and *Semple* v. *Wright*, 32 Cal. 659. (See, also, *Semple* v. *Hagar*, 27 Cal. 170; *Park* v. *Jenners*, 7 How. 634; *United States* v. *Peters*, 5 Cranch, 115; *Freeman* v. *Howe*, 24 How. 450; *United States* v. *Booth*, 21 How. 506; *Mott* v. *Smith*, 16 Cal. 533.)

By the Court, RHODES, J.:

The plaintiffs are the widow and son of José Cornelio Bernal. Their claim to the premises, which they derived under an alleged grant from Governor Figueroa to José Cornelio Bernal, was confirmed by the District Court, and the survey of the lands granted was finally confirmed by the District Court in 1863. Theodore Dehon, under whom the defendants claim, contested the survey, and his executor appealed to the Supreme Court; and in that Court the decree of the District Court was affirmed. The defendants rely upon title in the estate of Dehon under the Van Ness Ordinance, the premises being within the corporate limits of the City of San Francisco, as defined by the Act of April 15th, 1851.

The petition for confirmation of the claim being sufficient to give the Board of Commissioners jurisdiction of the claim, the decree of the District Court, on appeal from the decision of the Board of Commissioners, is not subject to a collateral attack from any quarter. The rule is well stated by Mr. Justice Field, in *Beard* v. *Federy*, 3 Wal. 489: "The Board having acquired jurisdiction, the validity of the claim presented, and whether it was entitled to confirmation, were matters for it to determine, and its decision, however erroneous, cannot be collaterally assailed on the ground that it was rendered on insufficient evidence. The rule which applies to the judgments of other inferior tribunals applies here—that where it has once acquired jurisdiction its subsequent proceedings cannot be collaterally questioned for mere error or irregularity." This question was considered in *Semple* v. *Hagar*, 27 Cal. 163, and the decision in that case accords with the conclusion now announced.

The decree confirming the survey was an adjudication that the lands mentioned in the decree confirming the claim were properly located and correctly surveyed. Dehon having made himself a party to the proceedings for the confirmation of the survey, neither he nor those claiming under him will

be permitted to question the decree. (*Treadway* v. *Semple*, 28 Cal. 652; *Semple* v. *Wright*, 32 Cal. 659.)

The Act of Congress of June 14th, 1860, provides that "the said plat and survey, so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land so surveyed had been issued by the United States." The title thus established is sufficient to enable the plaintiffs to maintain the action. To overthrow this title the defendants allege that the title was in the city, and claim that it passed from the city to Dehon, under the operation of the Van Ness Ordinance, and by virtue of the Act of Congress of 1864. They claim that the title of the pueblo and of the city, as its successor, was a perfect title; and that if not a perfect title, yet it was such a title that the city and her grantors were such "third persons" as are mentioned in the Act of Congress of March 3d, 1851, who are not affected by the patent of the United States, and, consequently, not by the decree of confirmation of the claim, nor the confirmed survey upon which the patent is to be issued. And they claim the right to attack the decree of confirmation and the survey, on the ground that the Act of 1864 excepts from the operation of the Act only the *bona fide* claims of others.

It may be conceded that all the title the city held passed to Dehon by virtue of the Van Ness Ordinance; but the defendants are not assisted by the Act of Congress of 1864. For, if the Act was sufficient to transfer the legal title, it did not have that effect, because it was subsequent to the confirmation of the survey, which is declared by the Act of 1860 to be equivalent to a patent issued by the United States. If the title was ever in the United States, it passed to the plaintiffs before the passage of the Act of 1864. The proviso to the fifth section declares "that the relinquishment and grant by the Act shall in no manner interfere with or prejudice any *bona fide* claims of others, whether asserted adversely under rights derived from Spain, Mexico, or the laws of the United States, nor preclude a judicial

examination or adjustment thereof." The Bernal claim is clearly within the proviso. But the defendants' counsel says that the *bona fides* of the claim is the vital matter in issue here. The position may be admitted, but in answer to the argument of counsel, it may be added that the *bona fides* of the claim conclusively appears from the decree of confirmation of the claim. The question was necessarily involved in the proceedings for confirmation. The good faith of the claim is an essential element of its validity, and its validity is conclusively established by the decree of confirmation. It could scarcely be credited that it was the intent of the Act of 1864, entitled "An Act to expedite the settlement of titles to lands in the State of California," to impair or destroy the decrees in all the proceedings had during the preceding· twelve years for the settlement of private land claims within the limits of the City of San Francisco.

The principal if not the only purpose for which a litigant establishes the fact that he is a "third person" within the meaning of the Act of 1851, is to enable him to produce a better title than that which is shown on the other side. We deem it unnecessary to argue the question whether the city possessed a perfect title to the pueblo lands; for it is not pretended that the four leagues, or any other amount of land, was set off to the pueblo. It is clear, both upon principle and authority, that the title is not deemed perfect until the lands are segregated from the public domain. (*Estrada* v. *Murphy*, 19 Cal. 248; *Thornton* v. *Mahoney*, 24 Cal. 579; *Seale* v. *Ford*, 29 Cal. 105; *Stevenson* v. *Bennett*, 35 Cal. 424; *Fremont* v. *United States*, 17 How. 558; *United States* v. *Fossat*, 20 How. 426.)

It does not necessarily follow, that because the inchoate title of the pueblo was older than that of Bernal, it was the better title. The Governor, in repeated instances, granted parcels of land within the limits of most, if not all, the pueblos in California; and many of those grants have been upheld and confirmed by the Courts of the United States.

What was the source or extent of the Governor's power in this respect, or whether the pueblo lands were withdrawn from his control, or remained subject to his disposal, as well as that of the pueblo authorities, are questions of great importance and interest, but their solution is not essential to the proper disposition of this case. The exercise of the power by the Governor to grant lands within the pueblos has been so long asquiesced in, and so many titles depend upon a recognition of the power, that it ought not now to be drawn in question, except upon the most cogent considerations. Counsel does not directly deny such authority in the Governor, but only indirectly, and by insisting that the pueblo held a perfect title. The decree of confirmation of the title of the city recognizes these grants by excepting them from the operations of the decree; and in confirmation of this particular grant, the Court affirmed the power under which it was made. The result is, that the title which the defendants as "third persons" set up—the title derived from the city—is not superior to that which the plaintiffs acquired by the confirmation of their claim and the approved survey.

The purchase of the property at a sale for taxes by the agent of the administrator of Dohon, while he or his tenants were in possession, did not pass or otherwise affect the title to the property. (*Kelsey* v. *Abbott*, 13 Cal. 609; *Moss* v. *Shear*, 25 Cal. 38; *McMinn* v. *Whelan*, 27 Cal. 318; *Coppinger* v. *Rice*, 33 Cal. 408.)

Judgment affirmed.

Mr. Justice CROCKETT, being disqualified, did not sit in this case.