[No. 2,691.]

DAVID UMBARGER ET AL. *v.* PEDRO CHABOYA
ET AL.

SPECIAL ACT CONFERRING JURISDICTION ON COURT.—If an Act of Congress gives jurisdiction to a District Court of the United States to adjudicate on the title to certain lands, the Court has no authority under the Act, to adjudicate on the title to lands other than those mentioned in the Act.

JURISDICTION OF COURT UNDER SPECIAL ACT OF CONGRESS.—If a District Court of the United States is authorized by a special Act of Congress to adjudicate on the validity of a Mexican grant to a tract of land de-

scribed in a petition filed by the claimant in said Court, the Court has jurisdiction to reject the grant except a portion thereof, and confirm that portion not thus rejected.

GRANTS OF PUEBLO LANDS.—If the claim of a Pueblo to a tract of land in California, under the laws of Mexico, was confirmed, and the decree excepted from the confirmation such parcels of land within the limits of the Pueblo as had, by grants from lawful authority, vested in and been confirmed to parties claiming thereunder, and such parcels as should thereafter, in proceedings then pending, be confirmed to such parties, the confirmation of such excepted parcels gave to the confirmees a title, as against claimants under the Pueblo confirmation.

IDEM.—In such case, the claimant under the Pueblo confirmation is not a *third person*, within the meaning of the Act of Congress of March 3, 1851, whose rights were not concluded by the confirmation to the grantee within the Pueblo limits, and cannot, in ejectment brought by the latter, show that the grant to the latter was a fabrication.

EFFECT OF CONFIRMATION OF GRANTS WITHIN PUEBLO LANDS.—If the tribunals of the United States confirm lands to a Pueblo, excepting therefrom grants made within the limits of the Pueblo to other parties, whether confirmed before the Pueblo confirmation, or afterwards upon proceedings then pending, a confirmation of one of such grants is conclusive as against the Pueblo, and cannot, in a collateral action, be questioned by one claiming under the Pueblo.

CONSTRUCTION OF BOUNDARY LINE IN DEED.—If a party conveys land by a deed, in which he describes it as being bounded on the east by the land of a third person, the eastern line of the land conveyed is the true boundary line between it and the land of such third person, and not the line as understood to exist when the deed was given, if the two lines are not the same.

APPEAL from the District Court, Third Judicial District, County of Santa Clara.

The Board of Land Cmmissioners confirmed the claim of the Pueblo of San José to four square leagues, and an appeal having been taken to the United States District Court for the Northern District of California, that tribunal, on the 6th day of August, 1857, also confirmed said claim, discribing it by metes and bounds. An appeal was taken to the Supreme Court of the United States, which Court, on the 13th day of June, 1866, also confirmed the claim "in trust for the benefit of the lot holders under grants from the Pueblo, town, or city of San José, or other competent authorities, and to any residue in trust for the use and benefit of the inhabitants of the city." The decree of confirmation contained the following clause:

"Subject to the following deductions, namely: the Ranchos Las Milpitas, Rincon de los Esteros, Pala, Yerba Buena, Cañada de Pala, San Felipe de las Animas, Laguna Seca, Santa Teresa, San Juan Bautista, Los Capitancillos, San Vicente, Las Uvas, Ojo Agua de la Coche, San Francisco de las Llagas, and also such other parcels of land as have been by grants from lawful authority vested in private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals in proceedings now pending therein for that purpose; all of which said excepted parcels of land are included in whole or in part within the boundaries above mentioned, but are excluded from the confirmation."

Pedro Chaboya, on the 2d day of March, 1853, filed a petition before the Board of Land Commissioners, for the confirmation of a grant of two square leagues, bounded on the north by the lands of José de Jesus Vallejo, on the east by the rancho of Antonio Suñol, and the road from San José to the valley, on the south by the Cañada Del Alviso Colondante Con Don Flujencia Higuerra, and on the west by the estuary. On the 19th of September, 1853, he filed with the Board a petition addressed by him to the Governor in 1839, asking for a different tract of land. With the petition were other papers showing some action taken by the government on the same. On the 24th of October, 1854, the Board rejected the claim. An appeal was taken to the District Court of the United States, and an order was made on the 15th of June, 1857, by the District Court, allowing Chaboya to file a supplemental petition. On said last named day the supplemental petition was filed. In this petition Chaboya stated that his former petition described the land incorrectly. The supplemental petition described the land, of which confirmation was sought as called, "La Posa de San Juan Bautista, in the present county of Santa Clara, and bounded by the land of Senor Bernalez, called Santa Teresa, on one side of the land of Senior Narvaez, and called San Juan Bautista, on another

side of the land of Antonio Chaboya, called Yerba Buena
y Socaire, on another side, and extending fifteen hundred
varas from the house of said Pedro Chaboya, towards the
Pueblo of San José, and containing two square leagues of
land more or less."

On the 30th of November, 1859, the case having been
submitted to the Court for a decision, was on motion of
the United States, again opened, and the order of submis-
sion was set aside to enable the United States to introduce
further testimony, documentary and otherwise, for the pur-
pose of showing the extent and boundaries of the land
occupied by the claimant; and it was further ordered that
the claimant should have leave to introduce rebutting testi-
mony as to said points, and that said additional testimony
should be confined to said points alone.

On the same day, the District Attorney of the United
States filed in said Court on behalf of the government a
certified copy of a genuine document, signed by the Al-
calde, and recorded on the day of its date in book 3 of the
original records of a former Pueblo de San José, and now
in the custody of the County Recorder of the county of
Santa Clara, and which document was in the words and
figures following:

"Know all men by these presents: That in accordance with
the decrees of the Junta of the Pueblo de San José, Califor-
nia, and entered of record on the 29th day of June, A. D. 1847,
and in accordance with the confirming decree of the people of
said pueblo passed in primary assembly on the 30th day of
June, of the same year, and entered of record in my office,
and in accordance with the laws and usages in such cases
made and provided, I, Kimball H. Dimmick, First Alcalde
of the Pueblo of San José, duly chose and qualified accord-
ing to law, do loan unto Pedro Chaboya and his heirs and
assigns forever, for their behoof and benefit, a certain tract
of five hundred acres of land, be the same more or less, of
the unoccupied lands of the Pueblo de San José, known on
the plat of said lands made by James D. Hutton, now on
file, as lot number six (6) east of the base line, being sub-
ject to the following regulations, viz:

"First.   Said lot of land shall be subject to an annual tax of three dollars, to be paid on the 1st day of January of each year, to the treasury of said pueblo.

"Second.   There shall be planted at each corner of every lot a fruit tree or tree of some kind, as a distinctive mark of the boundaries, on or before the expiration of one year from date.

"Third.   The municipal authorities of the Pueblo of San José, shall forever retain the right of opening and keeping open any roads that may be for the public benefit through any of said lands.

"In witness whereof, and in behalf of said pueblo, I have hereunto set my hand and seal of office, this 2d day of March, A. D. 1849.

"KIMBALL H. DIMMICK, First Alcalde."

The land described in the said document, signed by Dimmick, is within the boundaries of the land described in the supplemental petition.   The first section of the Act of Congress passed April 25, 1862, is as follows:

"Be it enacted by the Senate and House of Representative of the United States of America, in Congress assembled, that the District Court of the United States, for the Northern District of California, be and is hereby authorized and required to hear and decide upon the merits of the claim of Pedro Chaboya to a tract of land described in his amended petition filed in said Court on the 15th day of June, 1857, and called La Posa de San Juan Bautista, in the same manner and with the same jurisdiction as if the claim to the said tract of land had been duly presented to the Board of Land Commissioners under the provisions of the Act, entitled an Act to ascertain and settle the private land claims in the State of California, approved March 3, A. D. 1851, and an appeal had been duly taken from their decision to the said District Court by the said Chaboya."

On the 26th day of December, 1850, Pedro Chaboya, the subsequent confirmee, deeded to W. C. Jones and N. T. Eldridge, the north-east half league of the grant claimed by him.   The title thus conveyed came by mesne convey-

ances to the plaintiffs in this action. The description contained in the deed to Jones and Eldridge was as follows:

"A certain tract or parcel of land, being the north-east half league of the land or rancho of the said Pedro Chaboya; bounded on the east by the lands or rancho of the Higueras and Antonio Chaboya, on the north by the lots or lands of the Pueblo de San José de Gaudalupe, and on the south and west by the lands of said Pedro Chaboya; the same to be as near in a square form as possible and according to rectangular lines, and the same to contain exactly one half of a league square."

At the time the deed was given, the line between the land of Pedro Chaboya and Antonio Chaboya was generally understood to be further east than the United States finally located it.

The other facts are stated in the opinion.

*S. O. Houghton*, for the Appellant.

The document issued by the Alcalde, Dimmick, was unauthorized and void. The document purports to be a loan forever of five hundred-acre lot number six, of the unoccupied lands of the Pueblo de San José, subject to an annual tax of three dollars.

Under the Mexican law, no power is conferred upon the Alcaldes of Pueblos to dispose of large tracts of the lands of their respective Pueblos. The *exidos* or common lands proper of Pueblos were for the common use of the inhabitants of the Pueblo and were inalienable. The *dehesas*, or great pasture lands, however, could be disposed of by the State or territorial government.

The municipality could not alienate any of the lands in the sense of passing the fee, except of town lots, authorized to be granted to citizens of the Pueblo, upon which to build houses for their residences. The law upon this subject is clearly stated in Dwinelle's Cal. His. on pages 10, 11 and 12, under the titles Ejidos, or Exidos, and Dehesas. (See also note to *Strather* v. *Lucas*, 12 Peters, 442; *Redding* v. *White*, 27 Cal. 284.)

It appears from the record that the District Court of the United States had no jurisdiction to confirm to Pedro Chaboya five hundred-acre lot number six. If it be true, as I contend it is, that the grant by Dimmick is void, the title of plaintiff to the premises in question rests wholly upon the validity of the confirmation of lot number six by the Federal Courts. It will be observed that no claim was ever presented to the United States District Court by Pedro Chaboya for five hundred-acre lot six. In his supplemental petition, he asked that there should be confirmed to him, the tract of land "called La Posa de San Juan Bautista, in the present County of Santa Clara." The authority of the District Court to hear and decide the claim for the land described in the supplemental petition of Chaboya is derived wholly from the Act of Congress, and under that Act the Court could decide on the land only, described in the petition.

There was an entire want of jurisdiction to make any decree as to five hundred-acre lot six, and that want of jurisdiction appears from the record, and the judgment may therefore be attacked collaterally. (*Forbes* v. *Hyde*, 21 Cal. 222; *Hahn* v. *Kelley*, 24 Cal. 391.)

The Court must have jurisdiction both of the person and the subject-matter, or its judgment will be void. (*Borden* v. *Fitch*, 15 John. 141; *Bissell* v. *Briggs*, 9 Mass. 464; *Harris* v. *Hardeman*, 14 How. 339.)

It may be urged that, because five hundred-acre lot six was within the bounds of the tract described in the supplemental petition, that the Court had power for that reason to confirm it; and that would seem to be the only ground upon which a pretense of jurisdiction in the District Court could be founded. But such a position is clearly untenable, because the claim for the tract which was described in the supplemental petition, as has been already remarked, was claimed to have been derived from one source, and was claimed adversely to the Pueblo, while the claim for the five hundred-acre lot was derived from the Pueblo, and no claim was ever presented for the confirmation of that title. (*Bernal* v. *Lynch*, 9 Wal. 321.)

The confirmation to Chaboya of five hundred-acre lot six is not conclusive upon the appellants—they are "third persons," within the meaning of the Act of Congress of March 3, 1851.

The United States and Pedro Chaboya were the only parties to the proceedings had in the Courts of the United States in which lot six was confirmed, and as the defendants were neither parties nor privies to those proceedings, they are not bound thereby, nor are their rights in any way affected or impaired, for it is a familiar rule that judgments and decrees are binding only on parties and privies. (*Hollingsworth* v. *Barbour*, 4 Pet. 466.) And Congress, in providing for the presentation and adjudication of these California land claims, as if to avoid any question upon the subject, has expressly enacted that the decrees of the Federal tribunals, confirming such claims, or patents issued in pursuance thereof, shall be conclusive between the United States and the said claimants only, and shall not affect the interest of third persons. (Sec. 15, Act of March 3, 1851; *Teschemaker* v. *Thompson*, 18 Cal. 27; *United States* v. *Rodriquez*, 1 Wal. 588.)

The testimony offered by defendants to prove the boundaries of the rancho called for by the description in the deed from Chaboya to Jones and Eldridge, as understood and recognized before the confirmation and location of those ranchos by the United States, was admissible to show the location of the land intended to be conveyed by said deed. The parties to the deed evidently contracted with reference to the lines of those ranchos as they were understood at the time the deed was executed.

*Thomas Bodley* and *Wm. Matthews*, for the Respondent.

The learned counsel of appellants is correct in saying that the Dimmick grant conferred no title on Chaboya. That proposition is *res judicata*. (*Redding* v. *White*.)

We rest for title upon the provisional grants to Chaboya, made, the first by Alvarado on the 10th of May, 1839, and the second by José Castro, Prefect, on the 22d of the same month and year, and long possession thereunder, which

grants have, we say, been finally confirmed as to the lands in controversy here.

The counsel of Pedro Chaboya, who drafted his petition to the Board, mistook the lands claimed by him, which mistake he was permitted to correct by the District Court, so far as that Court could do so, but after the claimant had offered his grants, and put in his evidence of possession, and been met by the government with its counter evidence, and amongst other testimony the Dimmick grant, the Court dismissed the petition for want of jurisdiction, because, doubtless, the original petition did not describe the lands to which the testimony was directed.  To have taken advantage of such a mistake, in order to deprive a citizen of the territory ceded by Mexico to the United States of his property, would have violated the spirit, if not the letter, of the treaty, and been an act of bad faith, dishonoring to the United States.

To prevent this, Congress passed the special Act of April 25, 1862.  And we agree with counsel, that the authority of the District and Supreme Courts to hear and determine the said claim, is derived solely from this Act.

We cannot see the force of the argument made, that Congress had no power to give this authority to the Courts. The obligation to protect the inhabitants of the conquered territory in their property rested upon the conscience of the United States, and was to be discharged by the political department of the government.  (*Beard* v. *Federy*, 3 Wallace, 478.)

If the confirmation to Chaboya of the land embraced in lot six was valid, it was excepted, we contend, from the confirmation to the city.  The language of this exception, and which we have already quoted, is very broad, and has been construed partially by this Court in *The City of San Jose* v. *Urridias* (37 Cal. 344), and fully by the Supreme Court of the United States, in *Lynch* v. *Bernal* (9 Wall. 324).

The appellants claim that the Court erred in excluding evidence to prove the boundaries of the Higuerra and Antonio Chaboya ranchos.  The very question raised was determined in *Biddle Boggs* v. *Merced Mining Co.* (14 Cal.

367), where proof was made that the patentee had for a number of years constantly disclaimed ownership of certain lands included in his patent, and the testimony was held immaterial.

By the Court, WALLACE, C. J.:

This is an action of ejectment brought to recover a tract of land in Santa Clara county, lying southerly of the city of San José, known as lot numbered six of the five hundred acre lots so-called. At the trial the plaintiffs had judgment, from which judgment and also from an order denying their motion for a new trial, the defendants bring the present appeal.

The plaintiffs claim the premises by title derived from one Pedro Chaboya, who was the confirmee thereof under certain proceedings taken by him before the District Court of the United States, pursuant to a private Act of Congress passed April 25, 1862, entitled "an Act to authorize the District Court of the United States for the Northern District of California to hear and determine upon its merits the claim of Pedro Chaboya to a certain tract of land in California, called La Posa San Juan Bautista." (Private Acts of the Thirty-seventh Congress of the United States, page 70.)

The defendants claim by this title derived from the authorities of the city of San José, which city, as the successor of the former pueblo of that name, was the confirmee of a large area of lands, embracing the premises here in controversy with its exterior limits as confirmed; but there were expressly excepted out of the tract confirmed to the city certain ranchos and smaller tracts designated by name, and also "such other parcels of land as have been by grants from lawful authority vested to private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals in proceedings now pending therein for that purpose;" all of which said excepted par-

cels of land were included, in whole or in part, within the boundaries mentioned in the decree, but were excluded from the confirmation to the city.

The District Court of the United States, pursuant to the private Act of April 25, 1862, adjudicated the claim of Pedro Chaboya, and in November, 1862, rendered a decree rejecting his claim to the tract called "La Posa San Juan Bautista" in the private Act of Congress mentioned, except five hundred acres thereof, as to which latter tract, mentioned in the decree as "the same five hundred acres allotted to said Pedro Chaboya by the authorities of San José and accepted by him," his claim was confirmed, and upon appeal subsequently taken by Chaboya this decree was affirmed by the Supreme Court of the United States (Vide 2d Black's R. S. C. U. S., in which the history of the claim of Chaboya is detailed at length.)

1. At the trial of the action the plaintiffs, for the purpose of establishing the title of Chaboya to the premises in controversy, offered to read in evidence to the jury the decree of the District Court of November, 1862, just referred to; to this offer the defendants made the objection that the said decree was absolutely void for want of jurisdiction in the District Court to render it; but this objection was overruled, and the decree admitted in evidence, and the action of the Court below in this respect, having been excepted to by the appellants, presents the first point to be considered upon this appeal.

It is asserted in support of the objection, that the jurisdiction of the District Court in this instance was derived wholly from the private Act referred to, and must be limited by the terms of that Act, and that it therefore has no authority to adjudicate the claim of Chaboya to any lands other than those called "La Posa de San Bautista," and designated in the Act itself. To this proposition we accede. It is next insisted that the decree undertakes to confirm the claim not to the La Posa tract of two leagues or to any part thereof, but to one of the lots known as the five-hundred-acre lots of the municipality of San José. But we think that this view cannot be maintained. No claim was made

by Chaboya for such a lot before the District Court. The proceedings terminating in the decree were based upon his petition filed therein on the 15th day of June, 1857, and referred to in the private Act of Congress as an amended petition filed on that day, and this petition prayed the confirmation of his claim, not to a Pueblo lot, but to the tract of land mentioned in the Act as "La Posa de San Juan Bautista," and described in the petition as bounded by the ranchos Santa Teresa, San Juan Bautista, (Narvaez), the Rancho Yerba Buena Socayre, (Antonio Chaboya), and its northerly line, being some one thousand five hundred varas from the dwelling-house of the petitioner—the tract which was the subject of the claim being about two leagues in superficial area. The case presented by the petition was, therefore, precisely that one which the private Act authorized the Court to hear and determine. The proofs by which the petition was supported, or attempted to be, went to show that Chaboya had lived upon the land as far back as 1837, and he claimed that as early as 1839 he had been in possession of the two leagues of land of which he was seeking a confirmation. It also appeared that in the month of May of the latter year, he had solicited of the Governor a grant of the La Posa tract, alleging that his services in civil and military life entitled him to favorable consideration, and that the citizens of the Pueblo unjustly resisted his claims. An *informe* and report followed in the same month, and an order that Chaboya remain in possession pending the proceedings, but nothing more was done during the Mexican domination in California towards obtaining the grant he asked for. The decree of the District Court rejected in part, and in part confirmed the claim to the land described in the petition—*i. e.* the tract of two leagues called La Posa de San Juan Bautista—"and the same is hereby rejected, except for a tract of five hundred acres of land, being the same five hundred acres allotted to said Pedro Chaboya by the authorities of San José, and accepted by him, which said tract of five hundred acres is hereby confirmed to said Pedro Chaboya." The five hundred acres confirmed to Chaboya were in fact within the exterior limits of the two

leagues described in the petition, and were confirmed as a part of that tract, the reference to it as being the same tract allotted to him by the San José authorities being a mere identification of that portion of the La Posa tract which was confirmed to him. We are, therefore, of opinion, that the District Court of the United States did not exceed its jurisdiction in rendering the decree in question, and that the objection to its introduction in evidence taken on that ground was correctly overruled.

2. In order to establish the title of their grantor, the city of San José, the defendants, offered in evidence the final decree of confirmation rendered in favor of the city, but this was excluded, and an exception reserved to the ruling of the Court. The objection taken was that the premises in controversy, appearing to have been confirmed to Chaboya, were thereby in terms excepted out of the confirmation to the city. The argument on the part of the defendants is, that they, or their grantors, the authorities of the city of San José, were "third persons" within the meaning of the Act of Congress of March 3, 1851, to provide for the settlement of private land claims in California, and were therefore persons whose rights were not concluded by the confirmation to Chaboya; that hence it was competent for them to prove in this action that the confirmation to Chaboya was not based upon a grant of the lands so confirmed, but that his claim was sheer pretense and fabrication upon his part, though successfully imposed upon the authorities of the United States. But the question thus presented by the appellants is not *res integra.* It was determined against them in this Court in *Bernal* v. *Lynch* (36 Cal. 135), and upon error in the same case in the Supreme Court of the United States in *Lynch* v. *Bernal* (9 Wallace 315). The premises in controversy in that case were situate in the city and county of San Francisco, and within the limits defined by the Van Ness Ordinance, and the defendants, and those under whom they claimed, having been in actual possession on and before the 1st day of January, 1855, and continuously since then till 1857, when the action was tried, claimed title through the ordinance, the Act of

the Legislature of March 11, 1858, ratifying it, and the Act of Congress of July 1, 1864, relinquishing to the city the title of the United States for the uses and purposes specified in the ordinance, with the proviso "that the relinquishment and grant of-this Act shall in no manner interfere with or prejudice any *bona fide* claims of others, whether asserted adversely under rights derived from Spain, Mexico, or the laws of the United States, nor preclude a judicial examination and adjustment thereof." The plaintiff in that action relied upon a confirmation obtained upon a supposed concession of the premises alleged to have been made to one Bernal in 1834; but the Court found that in point of fact no such concession had been made, and that the claim of Bernal "was without any valid foundation in law or equity;" it was, however, held both in this Court, and afterwards in the Supreme Court of the United States, upon error brought, that neither the existence nor the validity of the claim confirmed to the widow and heir of Bernal could be properly brought in question in the action. It results upon the rule announced in that case that there was no error committed in excluding the confirmation to the city in this case.

3d. In the deed of Pedro Chaboya to Jones, the land conveyed was described as abutting on the east upon the lands of Antonio Chaboya. It is claimed by the defendants that the western line of the lands of Antonio Chaboya as understood to exist at the delivery of the deed, and not the true western line of those lands, as subsequently ascertained and fixed by the authorities of the United States, is to be taken as the eastern line of the land conveyed to Jones. If this construction be adopted, it will follow that the only lands conveyed to Pedro Chaboya would be not his own, but those of his brother Antonio.

But upon settled rules of construction, the call for the lands of Antonio Chaboya must be understood as a call for lands to which Antonio had title, and not a call for other lands supposed at the time to be his.

The case of *Cornell* v. *Jackson*, (9 Met. 150,) determined in 1845, is directly in point upon the question, and is well supported by numerous other authorities. It was an ac-

tion of covenant broken, and the particular call in question was:    *    *    *    "on the north by the lands of Joseph P. Tolman." This call was claimed by the plaintiff in that action to have reference to a conventional line agreed upon by Tolman in 1822—some five years before the delivery of the deed—by which conventional line the southern line of his lands had been thrown considerably to the northward of its true position, and in accordance with which conventional line Tolman was in occupation in 1827, when the deed in question was delivered. In 1843, in certain actions, in which the widow of Tolman and her grantee were the defendants, they had recovered against other parties, the premises lying between the conventional line and the true line of Tolman, it having been adjudged in those actions that no estoppel had arisen by reason of the fixing of the conventional line. Upon these facts it was held by SHAW, C. J., at the trial, that the call for the land of Joseph P. Tolman "must be taken as a call for his true, and not for the conventional line—must be construed to mean the land of which said Tolman had title, and not the conventional line agreed on by parol—although it was supposed at the time that the conventional line was the true line of Tolman's title, and although the southerly line of the Tolman land was established long afterwards." This ruling of the Chief Justice at the trial was afterwards unanimously affirmed by the Supreme Judicial Court, Mr. Justice WILDE in delivering the opinion of the Court, observing that the question was not what land was supposed to be conveyed, but what land was actually conveyed, and that that question was to be determined by the description in the deed. He adverted in this connection to the fact that no reference had been made in the deed to the conventional line, nor any attempt to prove, that at the time of its delivery the conventional line was pointed out as being the boundary of the land conveyed, and concluded that " in the absence of any such proof we think it clear that when a lot of land is conveyed, describing it as bounded by an adjoining lot, the true dividing

line between those lots must be considered as referred to as a boundary of the land conveyed."

It results from this view, that the offer of the defendants to show that the western line of the lands of Antonio Chaboya was understood in the year 1850 to be to the eastward of its position, as subsequently ascertained and fixed by the authorities of the United States, was correctly denied by the Court below.

Judgment and order denying new trial affirmed as of the day of the last submission of the cause in this Court. Remittitur forthwith.

RHODES, J., dissenting in part:

I dissent from the argument and conclusion of the Chief Justice upon the third point of his opinion.