# CHARLESTON.

## STATE v. HEROLD *et al.*

### Submitted March 9, 1915.   Decided June 18, 1915.

1. EVIDENCE—*Parol Evidence—Description in Deed.*

   For ascertainment of the intent of the parties to a deed in which the description of the subject matter is inconsistent, contradictory and ambiguous, extrinsic evidence is admissible. (p. 540).

2. BOUNDARIES—*Description—Mistake.*

   A beginning corner of a survey, inconsistent with other portions of the description of the subject matter of the deed, and shown by the situation and purposes of the parties and all the surrounding circumstances, to have been selected by mistake, may be rejected and the subject matter ascertained and determined by the parts of the description that harmonize with the obvious intention of the parties. (p. 540).

3. SAME—*Description—Intent.*

   A call in a description for a tree or other object as being on one of the exterior lines of the grantor's lands, which is shown by extrinsic evidence only not to be on such line, is latently ambiguous; and, if it appears from the situation and purposes of the parties and the surrounding circumstances, that adoption of such line, as the true monument, and rejection of the tree will make the conveyance conform to their real intention and that the adoption of the tree, as the monument, would defeat it, the former interpretation must prevail. (p. 540).

4. SAME—*Relative Weight—Monument.*

   Ordinarily the call for the tree or other object will prevail, under such circumstances; but, if the adoption thereof would make the deed include land the grantor did not own and omit land owned by him which would pass under the other interpretation, the case falls within an exception to the general rule, by force of a strong presumption against intent on the part of either party to include in the deed land to which the grantor had no title. (p. 541).

5. SAME—*Description—Reference to Other Conveyance—Date.*

   A deed is to be interpreted and construed as of its date and a call in the descriptive portion thereof for an adjoining tract of land, as a monument, is a call for the true location of such adjoining tract at the date of the deed; and the location of the adjoining tract, though not involved in the litigation, may be ascertained for the purposes of the interpretation of the deed calling for it. (p. 541).

   (ROBINSON, PRESIDENT, and WILLIAMS, JUDGE, dissenting.)

Appeal from Circuit Court, Nicholas County.

Suit by the State against A. C. Herold and John B. Emery and others, to forfeit lands for nonentry for taxation. From a decree adjudicating forfeiture and allowing defendant Herold to redeem, defendants Emery and others appeal.

*Affirmed in part. Reversed in part. Remanded.*

*G. G. Duff* and *Price, Smith, Spilman & Clay,* for appellants.

*W. C. Reddy, A. A. Lilly, Attorney General,* and *John B. Morrison* and *J. E. Brown, Assistant Attorneys General,* for the State.

POFFENBARGER, JUDGE:

The alleged right of A. C. Herold to redeem portions of a certain tract of land in a suit instituted by the State for sale thereof, on the ground of forfeiture for non-entry for taxation and non-payment of taxes thereon, accorded to him by the decree appealed from, is contested by John B. Emery and others who deny forfeiture of the title and claim the land mediately from A. C. Herold himself and payment of taxes thereon by themselves and those under whom they hold.

By a deed dated, July 9, 1866, Wm. H. Edwards conveyed to Herold a tract of land, in form, an irregular parallelogram, supposedly containing 600 acres. Out of this Herold sold a tract of 100 acres to Wm. R. Wilson and a tract of 125 acres to Ephriam Sargent. These two tracts purported to come out of the center of the 600 acre piece, the Wilson parcel extending clear across it and the Sargent tract only partially across it. Later he sold the east and west ends of the original tract to Benj. W. Byrne. No doubt Wilson and Sargent were in possession of their purchases for considerable periods of time before deeds were executed, conveying them, for the deed made to Byrne calls for their boundaries, but bears an earlier date than their deeds. The Wilson deed bears date May 22, 1877, the Sargent deed Oct. 22, 1877, and the Byrne deed, Sept. 28, 1874.

The Wilson deed describes the beginning corner of the Wilson tract as being a large chestnut, "on a line of said Herold's 600 acres;" the first line as running irregularly

northeast to "a small sugar on a rich hillside;" the second line as following the course of the north line of the original tract to "a large sugar on a rich hillside;" the third as being generally parallel to the first and ending at a "red oak near Cherry Run on the east side and on a line of the whole tract;" and the last as following the course of the south line of the original tract to the place of beginning. The beginning point in the description in the Sargent deed is identical with that of the Wilson tract: the last line but one is described as ending at pointers "on a line of the original survey;" and the last line is described as running "with the same, (line of the original tract), to the beginning." The chestnut and red oak called for in the Wilson deed, as being on the south line of the original tract, are shown by extrinsic evidence to be about 40 poles north of that line and within the original tract. Run from them, the east and west lines of the Wilson tract will carry it about 40 poles beyond the north line and into land he did not own and leave out, at the south, land he did own.

The two ends of the original tract were conveyed to Byrne by a single deed, the east end as containing 400 acres and the west as containing 150 acres. In the description of the former, the beginning corner is described as "a sugar on a rich hillside and corner to said Wilson's 100 acres;" the first line as running with Wilson to "a red oak on Cherry Run," (Wilson's southeast corner) ; and the second as running S. 56 E. 230 poles to "two chestnut oaks on a divide between the waters of Buffalo and Strange Creeks." Though not so described in the Byrne deed, this is the southeast corner of the original tract and the course of the line to it is the course of the south line of the original tract. The course of the third line is admittedly erroneous and the course of the last is the course of the north line of the original tract. The timber called for in the Edwards deed, as the northwest and southwest corners of the original tract, is called for in the deed to Byrne, as corners of his 150 acre tract, but is not described as being such corners, and the courses to and from those corners are the same as those of the north and south lines of the original tract. On the other side, the description connects this tract with the Wilson and Sargent tracts and is inconsistent with the western corners and courses to and from

them, if the Sargent and Wilson tracts are to be located 40 poles north of the original south line. Otherwise it is not.

Herold claims his deed omitted a strip 40 rods wide along the southern line of the 600 acre tract. If so, it has been forfeited and he has the right to redeem it, he not having paid any taxes on it, since the dates of his conveyances. All taxes on such lands as are covered by the Byrne deed have been paid and that land is now owned by John B. Emery and others. They say the Byrne deed properly construed carried their 400 acre tract and their 150 acre tract to the south line of the original tract. No adverse claim to so much of the 40 rod strip as lies immediately south of the Wilson and Sargent tracts is made.

Within the terms of the deeds extrinsic evidence may be considered upon the inquiry as to what was really intended. Such evidence developes latent ambiguities in the Wilson and Sargent deeds. Both call for the south line of the original 600 acre tract conveyed to Herold by Edwards. They also call for certain timber at the point of intersection with that line. Locating the timcbr on the line at the same point, when in fact it is about 40 poles from the line in each instance, these calls are necessarily ambiguous and latently so, because the discrepancies do not appear on the face of the deeds and are revealed only by extrinsic evidence. If we say the parties intended, in the case of the Wilson deed, to commence on that line and return to it, and, in the case of the Sargent deed, to run to that line, we do not go outside of the terms of the deeds, because that southern line is called for in the deeds as much and as clearly as the timber is called for in them. We do no more than ascertain, from the subject matter of the instruments and the situation and purposes of the parties, which objects they really intended to make the monuments, the trees or the line. One is as much within the deed as the other, in each case. In view of the extraneous evidence disclosing dominant intent, the phraseology of the calls is unimportant, as will be shown later. In locating these tracts first, we do no more than Herold did in his conveyances. He located the Byrne tracts by the Wilson and Sargent tracts. His description of the 400 acre Byrne tract begins with the northwest corner of the Wilson tract, but erroneously

describes it as being a sugar on a rich hillside. Wilson's deed properly construed puts that corner in the northern line of the original tract. In describing the Byrne 150 acre tract, he made the Sargent tract a monument and boundary and that tract runs down to the southern line of the original tract. Moreover the Byrne deed manifests clear intent not to go beyond the lines of the original tract. One of the corners of that tract is made a corner of the Byrne 400 acre tract, namely, the southeast corner. The distance from that call on another line is the exact distance called for in the eastern line of the original tract and, to reach that corner, the description calls for the course of the southern line of the original tract. Two of the corners of the 150 acre Byrne tract are corners of the original tract, the northwestern and southwestern. It reaches the former by running the same course as that called for in the old deed from Edwards and leaves the latter by that course. In these facts, is found overwhelming evidence of purpose to stay within the lines of the original tract, in the conveyances of the Byrne tracts, and it is shown in the very terms of the deeds.

The Wilson and Sargent deeds may be read and considered upon this inquiry because the tracts of land they convey are monuments called for in the descriptions of the Byrne tracts. They are as clearly monuments as the trees called for as corners, and being tied to the southern line in express terms and limited to the northern by distances, areas and intent necessarily arising out of the subject matter and situation and purposes of the parties, they carry the Byrne conveyances to the southern line, on the one hand, and limit them to the northern line, on the other.

That the Wilson and Sargent lands are not involved in this litigation and that those lands have been claimed and held in accordance with an erroneous interpretation do not preclude correct locations of their boundaries for the purpose of determining the true location of the Byrne tracts. The date of the Byrne deed is the time with reference to which the intention of the parties is to be ascertained. The contemporaneous or subsequent conduct of Wilson induced by an error as to the relation of the trees to the line is wholly immaterial. Every contract is construed as of the time at which it was

made. *Scraggs* v. *Hill*, 37 W. Va. 706; *Titchenell* v. *Jackson*, 26 W. Va. 496; *Crislip* v. *Cain*, 19 W. Va. 483. Wilson may have precluded himself by his subsequent conduct from insisting upon the true construction of his deed, but that would not affect claimants under the Byrne deed who have the right to go back to the date thereof for its true construction, unless they too are precluded from doing so by acquiescence or estoppel in some form. Of that there is no evidence. For the proposition here stated, namely, that a tract of land called for as a monument, in the description of another tract, is to be located in accordance with the true interpretation of its boundaries as of the time at which its description was written, the date of the deed, even though written under a misapprehension as to the location of the line and calling for the line and a tangible object not on it, as this one was, and erroneously treating them as identical, as this one does, authority is abundant nad the reason, logic and justice of the rule overwhelming. *Pennington* v. *Bordley*, 4 Harris J. (Md.) 450. "When A. conveys land to B., 'bounded on the land of T.', the true line of T.'s land is the boundary of the land conveyed, although A. and T. had previously agreed, by parol, on a different line, and had set up stakes to mark such line, and had afterwards held possession of their respective lands according to such lines." *Cornell* v. *Jackson*, 9 Met. (Mass.), 150. Chief Justice Shaw so instructed the jury in that case, and, on appeal, the instruction was sustained. Wilde, J. who delivered the opinion of the court, observing: "It has been argued, that it must be presumed that the grantor intended to convey the premises in conformity with the conventional lines, because he supposed, at the time of the conveyance, that those were the true lines; and this may well be. But he also must be presumed not to have intended to convey any part of the adjoining lots, to which he had no valid title." On an issue as to the location of an adjoining tract, deeds for that tract, subsequent in date to the deed calling for it as a boundary, are not admissible. *Cutter* v. *Caruthers*, 48 Cal. 178. To the same general effect see *Umbarger* v. *Chaboya*, 49 Cal. 525. A deed adopting the corner of a certain tract as the beginning point, in terms, conveyed a specified quantity of land on the west side of a line running to that corner, which

the grantor did not own, and was interpreted as having conveyed a like quantity on the east side of the line, which he did own. *Parkinson* v. *McQuaid,* 54 Wis. 473. A deed ambiguous as to a corner was limited to the land the grantor owned, in *Crosby* v. *Parker,* 4 Mass. 110.

Any plainly erroneous call may be rejected as a means of effectuating the obvious intention of the parties to a deed. Though the beginning point is presumed to have been ascertained and fixed with more care than any of the others called for and, therefore, ordinarily prevails in cases of inconsistency and conflict, the rule is not invariable; and, if consideration of the entire instrument and the surrounding circumstances shows it to have been erroneously selected, it yields to the other calls and is rejected. *Walsh* v. *Hill,* 38 Cal. 481; *Jones* v. *Andrews,* 62 Tex. 652; *Davis* v. *Smith,* 61 Tex. 18; *Zuhl* v. *Woods,* cited in *Jones* v. *Andrews,* 62 Tex. 652 as not having been reported. To hold otherwise would be the adoption of the absurd view that no mistake in the selection of the starting point could ever occur and that, in this one instance, the parties to deeds are always infallible.

Under this settled rule, the calls in the Byrne deed for the southeast corner of the old tract and the course of the old line to that corner and for the northwest and southwest corners of the old tract and the courses of the lines thereof to those corners, taken in connection with the fact that these calls, if given controlling influence, will confine the conveyances to land owned by the grantor, avoid conflict with the rights of adjacent owners and effectuate the clear purpose of the parties, ought to be allowed to control, and the inconsistent calls should be rejected as having been inserted by mistake. These calls, evidence of intent found in the terms of the deed, not outside of it, read in the light of the surrounding circumstances, plainly show it to have been Herold's purpose to convey, and Byrne's purpose to buy, what remained of the 600 acre tract after conveyances of parts thereof to Sargent and Wilson. What other purpose could they have had in calling for the old corners and old courses? Upon these calls alone, aided by admissible extrinsic evidence, and without the aid of the calls for the Wilson and Sargent tracts, lines and corners, the authorities warrant the limitation of the Byrne

conveyances to land within the 600 acre tract and carry them to the extent of the unsold areas of that tract. Since the calls in the Byrne deed for the Wilson and Sargent tracts, their corners and lines, cannot be reconciled with the calls for the corners and courses of the old tracts, nor with the manifest intention of the parties as disclosed by extraneous evidence, they may be rejected and ignored as having been inserted by mistake.

Properly analyzed and understood, the decisions in cases involving questions of the character of the one here under consideration are not in conflict. The apparent lack of harmony among them is due to the presence of determining factors in some of them that are not found in others. One of these is the important fact upon which rests the presumption against intent on the part of the grantor to sell, and on the part of the grantee to buy, what the former did not own. That fact is present here and was in *Mylius* v. *Raine-Andrew Lumber Co.*, 69 W. Va. 346. It was not present in *Robinson* v. *Braiden*, 44 W. Va. 183. There the grantor owned and made good title to all the land his deed covered. The grantee simply wanted more of the grantor's land than had been laid off and conveyed to him or wanted it in a different place. As to whether there was a mistake, the evidence was conflicting and no circumstance conclusive of the question of intent was disclosed. It was lacking in *Allen* v. *Matheny*, 63 W. Va. 443, also. In the opinion in that case, lack of any extrinsic evidence, reflecting light on the terms used in the deed, is distinctly asserted at page 446. That the deed did not call for the Preston line in terms nor describe the trees designated as being on that line was also noted as a potent fact. A controlling fact in *Winding Gulf Colliery Co.* v. *Campbell*, 72 W. Va. 449, extended lines beyond the trees called for to the lines on which they were described as standing, and that as matter of law. The terms used to designate corners in the partition deeds involved in that case were very similar to those used in the Wilson and Sargent deeds. They called for certain trees, describing them as being on the Moore and Beckly patent line. It was urged that the calls were for the trees, not for the line, as it is here, but the court instructed the jury that the call was for the line and that instruction this court sustained.

Why? Because the whole record showed the purpose of the partition proceeding was to divide and dispose of the entire Moore and Beckly tract of land and not leave a small strip of it undisposed of. We said, in that case, as I say here, discovery of the fact that the trees were not on the line, disclosed a latent ambiguity, letting in extraneous evidence for the determination of the true intent of the parties by the terms of the deeds aided by such evidence. Does not an equally strong presumption arise from the fact that extention of a line beyond another line to trees erroneously described as being on it will make the deed include land not owned by the grantor? Authorities already cited answer in the affirmative. *Cornell* v. *Jackson,* 9 Metc. Mass. 150; *Parkinson* v. *McQuaid,* 54 Wis. 473; *Crosby* v. *Parker,* 4 Mass. 110; *Pennington* v. *Bordley,* 4 Harris & J. (Md.) 150. "But he must be presumed not to have intended to convey any part of the adjoining lots, to which he had not valid title." Wilde, J., *Cornell* v. *Jackson.* "There was no intention to include in the survey made any lands not owned by the plaintiff." Taylor, J., *Parkinson* v. *McQuaid.* "But upon settled rules of construction, the call for the lands of Antonio Chaboya must be understood as a call for lands to which Antonio had title." Wallace, C. J., *Umbarger* v. *Chaboya.* "It is obvious that the vendor did not intend to sell, nor the vendee to buy, the latter because the former did not own it, and the purchaser did already own it." *Mylius* v. *Raine-Andrew Lumber Co.,* 69 W. Va. 346.

These and many other authorities affirm the proposition that rules designed for ascertainment of the true intention of the parties to deeds and other contracts are not to be perverted from their purposes and made to defeat such intention by adherence to them under circumstances making them inapplicable. All rules have their limitations and exceptions. They are so framed as to answer the requirements of usual and ordinary conditions only, and, if an unusual or anomalous state of the evidence makes the application of any of them defeat the end or purpose of its existence, effectuation of the true intent of the parties, the courts uniformly refuse to apply it and adopt a different means or method of solution of the problem. Ordinarily the tree or other object called for is the monument and the other words used in connection with it are

held to be mere matters of description. *Robinson* v. *Braiden* fell under this general rule. But the facts in the cases above cited and no doubt many others, in point of reason and justice, denied its application and put them under an exception to it. Likewise the general rule by which courses and distances are subordinated to monuments does not apply when, upon the whole case, the monument called for clearly appears to have been selected and marked by mistake. Such a monument controls nothing. It is totally rejected under another rule of equal dignity. Other exceptions from general rules, resting upon strong natural presumptions, may be found. Though a survey has been so made as to leave a narrow strip between the land conveyed and low water mark of a river and stakes actually driven along such survey and called for in the deed, the conveyance takes the land to low water mark, upon the presumption against unreasonable intent to retain a useless narrow strip along the water's edge. *Brown Oil Co.* v. *Caldwell,* 35 W. Va. 95. A line run for the purpose of leaving a 16 foot road, with an angle in it, but so described in the deed as to be straight and to leave in portions thereof more than 16 feet and in others less or nothing, was so construed and applied as to make it angular and to leave just 16 feet for the road throughout its entire length, in *Clayton* v. *County Court,* 58 W. Va. 253. And it was so construed to effectuate the manifest purpose of the parties to the deed, though the operation involved departure from stakes driven and called for in the deed as well as specified courses. "Generally it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines." *Western M. & M. Co.* v. *Cannel Coal Co.,* 8 W. Va. 408.

Of course such deviations or departures are not possible under the rules of construction, in the absence of ambiguity or uncertainty in the terms of the description. If the terms are certain, definite and consistent, they are to be applied as written, however absurd the result or variant from intent deducible from the circumstances, for, in such case, the facts and circumstances showing intention different from that expressed are not admissible at all. "Although parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses, or

which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, watercourses and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense in which particular words were probably used by the parties, especially in matters of description.'' Chief Justice Shaw, in *Salisbury* v. *Andrews,* 19 Pick. 250. ''But where any part of the description is inconsistent with the rest, and thus shown to be erroneous, it may be rejected, and, when the description given is uncertain and ambiguous, parol evidence will be admitted to show to what it truly applies.'' *Bond* v. *Fay,* 12 Allen, (Mass.) 86; Dev. Deeds, sec. 1042.

Under the latitude thus given, in cases of inconsistent, contradictory and ambiguous descriptions, I would extend the east and west lines of the Wilson survey, for the purposes of this case, through the trees called for as being on the southern line of the Herold tract, to that line and stop them at the northern line of that tract, and the east and west lines of the Sargent tract to the southern line of the Herold tract. This puts the trees in the lines and so gives effect to the call for them, but it also gives effect to the calls for that southern line. These tracts being so located, the descriptions of the Byrne tracts, calling for them as boundaries, will be consistent throughout and take all of the 600 acres, except what is included in the Sargent and Wilson tracts, leaving nothing south of them for forfeiture. But there is enough in the description of the Byrne tracts, taken in connection with admissible parol evidence, to justify rejection of the erroneous calls for trees as corners of the Sargent and Wilson deeds, and thus locate them within the 600 acre tract. As to them, the same result may be accomplished in either of these two ways.

The stress I have laid upon the presumption against intent on the part of Herold to grant any land north of the 600 acre tract is justified by the terms of his petition, which admits the land he conveyed to Sargent, Wilson and Byrne were all parts of the 600 acre tract, and does not even intimate that he owned or claimed any land north of it or elsewhere in that

country.  Edwards conveyed to him the 600 acre tract out of a boundary of 10,000 acres.  A witness says Brockerhoff owned the land on the north.  That Herold did not own it is at least a *concessum* in the case.

In so far as the decree allows redemption of the portions of the tract of land to which Emery and others are entitled by virtue of the deed to Benj. W. Byrne and subsequent conveyances of said Byrne title, adjudicates forfeiture of the title to said portions, orders sale thereof, in default of redemption, and fixes the amounts of the taxes, interest and commissions necessary to be paid by Herold in redemption, the decree is erroneous and will be reversed.  In other respects, it will be affirmed and the cause remanded for ascertainment of the land to which said Emery and others are entitled as aforesaid, in accordance with the principles, conclusions and findings herein made, and also of the amount necessary to redeem the residue of the land in controversy, and with direction to dismiss the bill as to the portions thereof to which said Emery and others are so entitled, after ascertainment thereof.

*Affirmed in part.  Reversed in part.  Remanded.*

ROBINSON, PRESIDENT, *(dissenting):*

Deeming the opinion of the majority to be at variance with well settled important principles, I dissent, and present the following as my view of the case.

Herold, owning a survey of land estimated to contain six hundred acres, conveyed therefrom a tract to Wilson, a tract to Sargent, and two tracts to Byrne.  All this was back in the seventies.  The original survey was a parallelogram in shape.  All agree upon its location.  Its corners are established.  Near the middle of the parallelogram the Wilson tract of one hundred acres was surveyed out.  Adjoining the Wilson tract on the west the Sargent tract of one hundred and twenty-five acres was laid off.  A portion of the original survey was thus left to the east of the Wilson tract and another portion to the west of both the Wilson and Sargent tracts.  That to the east of the Wilson tract embraced four hundred acres; that to the west of the Wilson and Sargent

tracts embraced one hundred and fifty acres. These remaining tracts were conveyed to Byrne by a single deed. In 1910 the commissioner of school lands instituted this suit to sell for the benefit of the school fund a strip extending from one end of the parallelogram to the other, lying along the southern line thereof, as having been forfeited in the name of Herold for non-entry. The theory of the suit is that the deeds to Wilson, Sargent, and Byrne did not embrace this strip, that title thereto remained in Herold, and that by reason of his failure to keep the same entered for taxation, it became forfeited to the State, though taxes were always paid on the Wilson, Sargent and Byrne tracts. A decree in the cause finds the strip forfeited and directs that the same be sold unless Herold redeems it. The decree is based on a survey which finds the strip to contain 159-3/8 acres. Emery and others, successors to Byrne in title, contested the right of the State to sell this strip as forfeited or the right of Herold to redeem it. They insisted that the Wilson, Sargent, and Byrne tracts which were surveyed out of the parallelogram all bordered on its southern boundary line and were so shaped as exactly to cover the original survey of six, hundred acres. In other words, they claimed that the deeds to Wilson, Sargent, and Byrne left in Herold no title to any part of the original survey. But, as we have seen, these contentions were overruled by the decree. Emery and others have, therefore, appealed.

It seems clear from the Wilson and Sargent deeds, viewed with the Duffy map upon which the decree is based, that the draftsman of those deeds believed he was making the southern line of the original survey to be the southern boundary of the tracts conveyed to Wilson and Sargent. The Wilson deed defines the southern boundary line of the tract conveyed thereby as running from "a large chestnut on top of the divide between Buffalo and Strange Creek and corner to E. Sergants land, on a line of said Herold's 600 acres" to "a red oak near Cherry Run on the east side and on a line of whole tract." The Sargent deed defines the southern boundary line of the tract conveyed by it as running from "pointers on a line of the original survey and with the same" to "a large chestnut on said ridge". This chestnut is plainly the same that is

mentioned in the Wilson deed. It is a corner between the two tracts of land. So the southern boundary of these two tracts was supposed to border on the southern line of the original survey. The timber called for as fixed monuments is described in the deeds as being on that line. Doubtless the draftsman believed it was. But the survey made in this case, and testimony in relation to the actual location of the chestnut and red oak, show these trees to be about forty rods north of the southern boundary line of the original survey. The chestnut and the red oak have been proved to be at the footsteps of the surveyor. These two trees, out in the middle of the southern part of the original survey, have been made the guiding points in clipping off from the original parallelogram the long strip extending from end to end, about forty rods wide, which has been decreed to be forfeited as the property of Herold. Not a word has been introduced by way of evidence to show that 'the witnesses were mistaken about the trees designated on the map being the ones meant by the deeds. If a chestnut and a red oak answering the description in the deeds can be found on the southern line of the original survey, it has not been made to appear.

The case is presented and argued as though we were called upon to say whether the whole of the strip was omitted in the three conveyances to Wilson, Sargent, and Byrne—whether title to all of it remained in Herold. But so far as portions of the strip may or may not be parts of the Wilson and Sargent lands, we are not called to decide. No parties as claimants of the Wilson and Sargent tracts have been brought into this suit or have appeared therein. Emery and others, successors to Byrne in title, have no interest in any part of the strip which would be in the Wilson and Sargent tracts, if the southern line of the original survey is their true southern line. So delineation of the Wilson and Sargent corners is only necessary because it is submitted that the description in the Byrne deed may be corrected or controlled by them. It is the Byrne tracts that belong to appellants and about which they may litigate in the cause. They were the only litigants below as against the State and Herold. They plainly have no right to litigate any question about that which does not belong to them. They claim no interest through the

Wilson and Sargent titles. Only as far as any of the tracts conveyed to Byrne has been affected by the decree, may they appeal. Whether in the Wilson and Sargent deeds the true southern boundary is the line indicated by the trees called for therein, or is the southern line of the original survey mentioned therein, may not be decided in the absence of those in interest.

Appellants say that it is evident that Herold, by the deeds to Wilson, Sargent, and Byrne, intended so to lay off and convey the tracts that they would exactly fit each other, and all taken together be simply the original parallelogram. If that was the intention, Herold failed to express it by the deeds. The particular tract should be located by the description in the deed conveying it. The intention of the grantor must be gathered from the language of his deed, not by outside speculation or surmises arising years after the date of the deed. It is true that if we could ignore all of the established monuments called for in the deeds but those which conform to the original parallelogram, and except as to the latter be governed by the degree courses, we could make the three tracts exactly fit into and consume the original parallelogram. In other words, if we could ignore some of the fixed monuments established by evidence as ones called for in the deeds, and depend in their stead on degree courses leading from other fixed monuments called for and not ignored, we could make the Wilson, Sargent, and Byrne tracts to be exactly the original parallelogram. Yet we can not do this, if for the intention of the parties we look to specifically mentioned monuments the location of which are known. From presumption and other things outside of the deeds it might be said that Herold did not intend to leave a part of the original survey unconveyed or to run over in his conveyance on land outside of it and not owned by him. But the descriptions in the deeds do not show that—construed as they must be by that in them which is most certain in preference to anything in them less certain—construed by the settled rule that course and distance must give way to fixed monuments. The Wilson deed, even if it fixes the tract to the southern line of the original survey, carries the tract at the other end to monuments located beyond the bounds of the

original survey. The Sargent deed omits land to the south, unless we ignore a fixed monument, and give more force to the call which mistakenly designates that monument to be on the southern line of the original survey. The Byrne deed, in describing the four hundred acres, ties the tract by fixed monuments so that a triangular piece of the original survey is left unconveyed at the south, and a similar piece outside the original survey is taken in at the north. The Byrne deed, in describing by fixed monuments the other tract of one hundred and fifty acres, takes in at the north land outside the original survey, and may omit some therein at the south.

The Byrne deed embracing the two tracts speaks for itself. Its specific calls for monuments do not conflict with calls for any line of the original survey. It does not say that the Byrne tracts must evenly fit the original parallelogram. For, nowhere does it call for a line of the original survey. Unless we change its calls for monuments, we must take it as expressing the intention of the parties to lay out the land to border on those monuments. The deed as it is, plainly expresses intention to convey the land by the monuments mentioned. If a mistake was made in so describing the land to be conveyed, the deed does not tell us so. Where does the deed locate the land? That is the only question before us. This is not a suit to reform a deed for mistake. ''Under cover of construction a court cannot reform a written contract to make it express the real intention of the parties, which by mistake is not expressed in the words thereof.'' 2 Page on Contracts, sec. 1130. We have no right to say that the parties did not intend that which the deed without doubt says they did intend. There is no ambiguity in the calls for particular monuments. We are not dealing with a description of land so conflicting or inconsistent in itself that we find a mistaken call. ''If there is anything equivocal in the language of the grant, the courts declare its interpretation. But if the parties have used plain and explicit language—if they have fixed a boundary which no man can mistake—courts have nothing to say about it; construction in that case has no office to perform, and the law makes no intendment.'' Tyler on Boundaries, 127.

Now, the Byrne deed, in describing the four hundred acres,

calls for a beginning at "a sugar on a rich hill side and corner to said Wilsons 100 acres". This sugar is proved to be there. True, it is outside of the original survey, forty rods to the north, but from the evidence it is nevertheless the sugar intended. Right here it is said that Wilson's tract does not extend that far north, But by his deed it does. By Wilson's deed the sugar was a corner to his one hundred acres, as the Byrne deed says it is. A call in Wilson's deed is for this same sugar, without reference to its being on the northern line of the original survey. If we were construing the Wilson deed, and were to extend it to the southern line of the original survey, since it calls for monuments to be there though they are not, we could not make it conform to the northern line of the original survey, which it does not mention. Can we say that Herold did not intend that the Byrne four hundred acres should not begin at the sugar on a rich hill side? He plainly says that the survey of the tract begins there. Nothing in the deed says the contrary. By what rule can we say otherwise? Shall we say otherwise, simply because Herold may not have owned the land on which the tree stood? If so, then where shall we begin? Down at the northern line of the original survey? If so, at what point? The deed says nothing about any such a beginning.

Then, from the beginning corner of the Byrne four hundred acres, the sugar on a rich hill side, the call is for a red oak on ·Cherry Run, on a line of Wilson. As the proof in the case stands, this is the red oak on the southern boundary of the Wilson tract, about forty rods north of the southern line of the original survey. The Wilson deed says that the red oak should be on the southern line of the original survey, but the Byrne deed does not describe it as being on that line. The latter deed simply calls for a red oak on Cherry Run, which is proved to be located about forty rods north of the southern line of the original survey. It is argued that, since the Wilson deed locates the red oak on the southern line of the original survey, we should, as to the Wilson deed, make that line prevail over the red oak; and then, having found the Wilson deed to be mistaken as to the red oak being on the southern line of the original survey, take notice of the same mistake being in the Byrne deed. It is said that we should

do this preserving the claimed general scheme to convey away all of the parallelogram by the Wilson, Sargent, and Byrne deeds. The descriptions in these deeds do not vouch such a scheme. They are not even contemporaneous, or parts of the same transaction. The Byrne deed, in describing the four hundred acres, does not put the red oak on the southern line of the original survey, and we know of no rule whereby we can read the Wilson deed for the Byrne deed in this particular, even if we were to change the description in the Wilson deed by eliminating the call for the red oak as a mistaken one. The red oak as called for by the Byrne deed, has been located by the proof at a particular place. Witnesses prove it to be at the place called for by the deed. This tree is a fixed monument. Nothing in the Byrne deed proves it to be a mistaken call. Nothing in that deed shows intention to locate it on the southern line of the original survey. We must give the red oak the recognition that its certainty deserves. Course, and distance and other calls less certain than this marked tree must give way to it. "Marked trees upon the land remain invariable, according to which neighbors hold their distinct lands. On this ground, our juries have uniformly, and wisely, never suffered such lines, when proved, to be departed from, because they do not exactly agree with descriptions in conveyances." *Herbert* v. *Wise*, 3 Call, 240. We can not leave the red oak and adopt a point on the southern line of the original survey about forty rods south of it, for that would do plain violence to the specific description given in the deed. We can not change that which the parties to the deed most specifically expressed in it. True, it looks like they should have followed the southern line of the original survey, but it is apparent they did not, if the red oak has been truly found and properly mapped. Not what they should have done in shaping the land—not even what they may have intended to do, yet wholly failed to do—but what they actually did by the express terms of the description, should be our guide in the present instance. The red oak called for by the Byrne deed in describing the four hundred acres, has been established about forty rods north of the southern line of the survey, and we have no basis on which

to hold that it is elsewhere or that it was mistakenly adopted in the deed.

The record is, however, not so consistent in establishing the next point of the description in the deed as to this Byrne tract. "Two chestnut oaks on the divide between the waters of Buffalo and Strange Creeks" are called for as the terminus of the line leaving the red oak. These monuments are found and established, yet instead of proceeding to them, giving them the merit given to the red oak, the surveyor whose map has been adopted as the basis of the decree, follows the course and distance to a new point and establishes a stake, thereby making a corner not called for in the deed, more than forty rods to the north of the one called for therein. The "two chestnut oaks on the divide between the waters of Buffalo and Strange Creeks" are unquestionably monuments of the original survey, though the Byrne deed does not name them as such. When a line is run to these two chestnut oaks directly from the red oak as the deed calls, a long, triangular piece of ground is left south of the Byrne four hundred acres and north of the southern line of the original survey. This triangle the Byrne deed does not convey from the original survey. On the map it will appear by lines from K to A, from A to N, and from N to K. The surveyor seems to have been bent on preserving equal width for a strip omitted by the Wilson, Sargent and Byrne deeds from the original survey. But to do this he had to establish a corner that the Byrne deed itself did not establish, and to ignore a monument it called for—one not only findable but actually found. His persistency in clinging to the red oak and in not clinging to the two chestnut oaks is inconsistent, but no doubt unwittingly so. Therein was violated the elementary rule that course and distance must yield to fixed and established monuments the location of which are known and found. *Matheny v. Allen,* 63 W. Va. 443; 2 Enc. Dig. Va. & W. Va. 582.

Again the same elementary rule was violated by the surveyor as to the description of the one hundred and fifty acres conveyed by the Byrne deed. He confesses that he did not survey all this tract. But he established a corner at a stake marked O by elongation on paper so as to reach another stake at P, not called for in the deed, and thus he preserved south

of P the forty rods strip out in this territory also.  To do this he ignored monuments called for in the deed, which witnesses testify are actually on the ground, at C and B.  From the evidence there seems to be no reason why he should not have followed the fixed and established monuments called for in the deed, particularly why the line from C to B can not be laid on the ground just as the deed points it out.  Then from B the call is for a post, corner to Sargent's land.  The evidence does not establish the location of that post.  If it is at R, as a view of the proper laying out of the Sargent tract by the known monuments called for by the deed would indicate, no land of the original survey was omitted from the Byrne deed in describing the one hundred and fifty acres. If the post is somewhere to the north of R, then the line from the proved corner of the Byrne one hundred and fifty acres at B to the post will leave a small triangular parcel omitted from the original survey.  Further surveying and further evidence are necessary here.

It is clear that Duffy did not make surveys of the Byrne tracts conformable to the descriptions in the deed.  The Commissioner to whom the cause was referred, adopted this erroneous survey, and the court over exception carried it into the decree.  Therefore, the decree ought to be reversed, and the cause remanded for a surveying of the land according to established law and for proceedings which should necessarily follow.  The conclusion of the majority that the Byrne deed conveys all of the remainder of the original parallelogram can stand upon no intention expressed by that deed.  The majority virtually say that the parties to the deed did not intend the fixed monuments—the beginning sugar and the red oak—to figure in the description at all.  Then, why were they resorted to?  Only by guessing at intention contrary to that which the deed expresses, can such a conclusion as has been reached in this case by the majority be brought about.

WILLIAMS, JUDGE:

I dissent from the majority opinion and concur in the foregoing opinion of Judge ROBINSON.