# CHARLESTON.

MYERS et als. v. BLAND et als.

Submitted January 25, 1916.   Decided February 1, 1916.

1.  INJUNCTION—*Title of Plaintiff—Cutting of Timber—Pleading.*

A bill in equity by an owner of land who is out of possession, but has perfect title, to enjoin the cutting of timber thereon, need not allege the pendency of an action of ejectment nor intention to institute such an action, to establish his title.  (p. 548).

2.  SAME—*Plaintiff's Title—Adverse Possession—Cutting of Timber.*

Evidence of title in the defendant to a portion of the land on which the timber stands, by adverse possession, does not prevent injunctive relief as to so much of the timber as is on the portion of the land to which the plaintiff has good title.  (p. 549).

3.  SAME—*Plaintiff's Title—Cutting of Timber—Ambiguity in Deed.*

A latent ambiguity in the descriptive clause of a deed, which description, in the absence of proof of facts showing a contrary intention, gives the title to the plaintiff in such a bill, does not prevent injunctive relief against the cutting of timber on the land, without an allegation of the pendency of an action of ejectment or intention to institute one, unless such facts as would, if established, overthrow the *prima facie* meaning of the description, are averred in the answer or disclosed by the record.  (p. 549).

4.  BOUNDARIES—*Description of Land—Monuments.*

A monument called for in, a deed for a tract of land and erroneously described as being the corner of another tract, or as being in the line thereof, if identified, is controlling, and the line stops at the monument, unless it is apparent from the character of the land, the situation, and purposes of the parties and the surrounding circumstances, that the call for the monument is erroneous and the corner or line mentioned was contemplated as the terminus of the line.  (p. 549).

Appeal from Circuit Court, Wetzel County.

Suit by Ingrim Myers and others against Samuel Bland and others. From decree for plaintiffs, defendants appeal.

*Reversed in part. Affirmed in part.*

*Hall & Hall,* for appellants.

*Thos. H. Cornett,* for appellees.

POFFENBARGER, JUDGE:

The titles of the parties to this bill to enjoin the cutting of timber on a tract of land containing 16 acres, on the theory of good title in the plaintiffs, spring from a common source, and the substantial right of the controversy depends upon the construction of the descriptive clause of a deed for a tract of 50 acres of land, apparently owned by the defendant, Harriet Wade, which, it is claimed includes the 16 acre tract. Resolving this question in favor of the plaintiffs, the circuit court overruled a motion to dissolve the preliminary injunction awarded and later perpetuated the injunction and referred the cause to a commissioner, for the taking of an account of the value of the timber cut.

Both parcels of land came out of a tract of 450 acres, conveyed to Thomas G. Smith by Horace Wirtz and others, by a deed dated, September 28, 1856. On June 22, 1876, Smith conveyed to Samuel J. Long 17½ acres of this tract. On September 17, 1881, he conveyed two other portions of it, one to Joseph Ruckman and Eliza Ruckman, containing 144 acres, and the other to Owens Taylor, containing 50 acres, the tract now owned by Mrs. Wade. The 16 acre tract in controversy, lies, for the most part, between the 50 acre tract and the 144 acre tract, and one contention of the defendants is, that Smith intended to convey to Taylor the land up to the line by which he conveyed to the Ruckmans. By a deed dated, February 14, 1882, Taylor and wife conveyed the 50 acre tract to Harriet Wade. What interest the Blands, the other defendants, have in the land or timber, is not disclosed by the record. Likely they are purchasers of the timber or employees of Harriet Wade, engaged in the cutting thereof. By a deed dated, June 15, 1901, Thomas G. Smith and wife conveyed the 16 acre tract to John M. McKimmie and several other parties, some of whom conveyed their undivided interests to H. J. Rich-

mond. One of the McKimmies became a bankrupt, and his trustee in bankruptcy, by a deed dated November 23, 1909, conveyed his interest in the tract to Ingram Myers. Hannah J. Richmond now owns an undivided 5-7 of this tract, Emaline A. Kirkman, an undivided 1-7, and Ingram Myers, the remaining 1-7, provided the title is good.

To the southwest of the portions of the Smith land, conveyed to Harriet Wade and the Ruckmans and also of the 16 acre tract, lay a tract of 46 1-2 acres owned by B. Haley, or known as the Haley land. As described in the deeds made from Smith to Taylor and from Taylor to Wade, the line of the 50 acre tract begins at a dogwood, standing at the apex of the triangle constituting the 16 acre tract, and runs East, 116 poles; thence South 1° West, 26 poles; thence North 66 1-2° West, 27 poles, to a stone in a low gap; thence South 43° West, 154 poles, to "a white oak corner to Haley." The white oak so described is not a corner to Haley. To reach the well defined Haley corner, the course would have to be varied and the line extended 11 1-4 poles. The next call is "thence N. 51 1-2° W., 23 poles to a stone in said Haley line." That stone is about the same distance from the Haley line as the white oak. The description then calls for a line running North 24° East 40 poles to a stone, and thence North 11 1-2°, (E), 80 poles to the place of beginning. To make this description take in the 16 acre tract, the eastern line would have to be extended 11 1-4 poles and the course altered, and the southern line run from the Haley corner North 43 1-2° West, 102 poles to a poplar, corner of the Ruckman land. Then, following the Southern Ruckman line back, on a course South 51° East 52 poles to a poplar stump, it would run North 28 1-2° West, 118 poles to the place of beginning. The corners of the 50 acre tract, which are in dispute, the white oak at the end of the 154 pole line and the stone at the end of the 23 pole line, are definitely located and are not in the Haley line, as the deed says they are, nor can the lines be so run from them as to include any part of the 16 acres.

Lack of an allegation of the pendency of an action of ejectment and of intention to institute such an action, to determine the question of title, is relied upon as denying equity jurisdiction. If the title is dependent upon a question

of fact, proper for jury determination, this objection is well taken. In such a case, the bill, to warrant an injunction, must aver the pendency of an action of ejectment or intention to institute one. *Freer* v. *Davis,* 52 W. Va., 1; *Eakin* v. *Taylor,* 55 W. Va., 652. But, if the question of title is one of law for the court, depending upon the construction of the title papers, such an allegation is unnecessary in a bill of this character. *Ephriam Creek Coal & Coke Co.* v. *Bragg,* 75 W. Va. 70, 83 S. E. 190; *Sult* v. *Mochstetter Oil Co.,* 63 W. Va. 317. The tenableness of this objection, therefore, depends upon the nature of the issue made.

Title to a small portion of the land in the northern angle of the tract is claimed by the defendant, Harriet Wade, under the law of adverse possession, and there is some evidence tending to sustain this claim. But that title, if any, is limited to the land actually occupied, for her enclosure of additional land admittedly does not cover the requisite period of ten years. As to this small corner, there is an issue of fact, if her deed does not include it and that of the plaintiff does. But, as the timber in question is not on that portion of the land, and the bill seeks, primarily, protection of the timber, not determination of the title to the land, this issue does not defeat equity jurisdiction, if the deed under which the defendants claim, properly construed, does not, as matter of law, include the 16 acre tract, and the deed under which the plaintiffs claim does include it. The latter may have lost a portion of their land by the adverse possession of the defendants, but in that event, their right to restrain the cutting of the timber on the residue thereof would be clear.

Ordinarily a monument called for in a deed and erroneously described as being the corner of another tract, or as being in the line of another tract, if identified, is controlling, and the line stops at it. *State* v. *Herold,* 76 W. Va. 537, 85 S. E. 733; *Matheny* v. *Allen,* 63 W. Va. 443; *Harriman* v. *Brown,* 8 Leigh 697, 714; 5 Cyc. 915, 921. But such a description is ambiguous and may be interpreted, in the light of the subject matter, the situation and purpose of the parties and the attending circumstances. If such evidence clearly tends to prove intention on the part of the parties, to adopt the corner or line described as being identical with the monument,

such intention will be allowed to prevail, and the monument will be disregarded. *State* v. *Herold,* cited; *Mylius* v. *Raine-Andrew Lumber Co.,* 69 W. Va. 346; *Winding Gulf Collieries Co.* v. *Campbell,* 72 W. Va. 449; *Clayton* v. *County Court,* 58 W. Va. 253; *Brown Oil Co.* v. *Caldwell,* 35 W. Va. 95. The record in this case, however, discloses no fact from which such intention can be inferred. That the description of the white oak and the stone are mistaken is manifest, but there is nothing which indicates intention on the part of the grantor to convey, nor on the part of the grantee to obtain, any more land than is included in the boundaries called for in the description. For aught that appears in the record, Owens Taylor obtained all the land he paid for and Mrs. Wade obtained the quantity her deed calls for. Although the 16 acre tract is very irregular in shape and lies between the Taylor tract on the east, the Ruckman tract on the west and the Haley tract on the south, its form and situation are not such as to raise a presumption against intention to retain it. It must be remembered that the deed to Taylor does not call for the Ruckman land, and it is not shown that the deed to Ruckman calls for the Taylor land, although both were executed on the same day. The misdescription of monuments proves nothing except the belief of the parties that the Taylor land extended to the Haley land. It does not prove that, if the parties had known it did not do so, the line would have been extended so as to take it in, nor is there anything in the circumstances tending to prove intent to do so. No facts sufficient to withdraw the interpretation of the description from the operation of the general rule above referred to, are averred by the answer or otherwise disclosed. Hence, the question of title, in so far as the deeds are controlling, was one for the court, and the plaintiffs, having good title to the unimproved portion of the tract, were clearly entitled to enjoin the cutting of timber thereon. *Pardee et al.* v. *Camden Lumber Co.,* 70 W. Va. 68; *Pardee & Curtin Lumber Co. v. Odell,* 71 W. Va. 206.

Our conclusion is that the decree, in so far as it enjoins and restrains the defendants from cutting the timber on the tract of land, in the bill and proceedings mentioned and described, is correct, but that it is erroneous, in so far as it

determines the question of title to so much of the 16 acre tract as the defendant, Harriet Wade, has improved and cultivated. As to that portion she may be able to establish title in herself by adverse possession. The decree will be reversed, therefore, in so far as it adjudicates title in the plaintiffs to the improved portions of the land, and the bill dismissed as to it, and, in all other respects, the decree will be affirmed.

*Reversed in part. Affirmed in part.*