# CHARLESTON.

RISSA HUTTON v. ROSA WARD, *Executrix.*

(No. 5176)

Submitted May 12, 1925. Decided June 9, 1925.

1. PARTITION—*Mistake in Partitioning Tract of Land, Which if Corrected Would Affect Rights of All Partitioners, Except by Agreement of Parties, Can be Corrected Only by Suit in Equity.*

    If in fact a mistake has been made in a decree partitioning a tract of land among a number of partitioners, which if corrected would affect the rights of all, such mistake, unless by agreement of all the parties, can be corrected only by a suit in equity brought for that purpose. (p. 367.)

    (Partition, 30 Cyc. p. 305).

2. SAME—*Instruction that Plaintiff Cannot Shift Lots and Lines of Partition as Actually Platted and Located so as to Conform to His Contention in Action to Recover Value of Timber Held Proper.*

    And, if on the trial of an action brought by the owner of one or more of the tracts involved in such partition against the owner of one or more of the tracts adjoining them, to recover the value of timber alleged to have been taken by defendant from plaintiff's land, the plaintiff relies on the theory that a mistake was made in the location of one or more of the lines dividing said adjoining lots, and which mistake can not be corrected to conform to plaintiff's contention without doing injustice to the defendant and the owners of the other tracts involved in the partition, the court may properly instruct the jury that plaintiff can not in such action shift the lots and lines of said partition as actually platted and located on the ground so as to conform to his contention in respect thereto. (p. 369.)

    (Partition, 30 Cyc. p. 305).

3. SAME—*Rule that Jury May Disregard Apparent Mistake in Partition and Find According to Intention of Parties Held Not Applicable to Action for Cutting Timber, Based on Theory of Mistake in Locating Line in Partition.*

    When the facts are as assumed in the second proposition, the rule that when it is apparent that a mistake has been made in a deed or partition of land, the jury may disregard the mistake and find according to the intention of the parties, is inapplicable. Before such a mistake can be disregarded if

injustice might be done to third parties affected, it should be corrected by decree or deed, so as to protect defendant and all others involved therein.    (p. 372.)

(Partition, 30 Cyc. p. 306).

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Error to Circuit Court, Randolph County.

Action by Rissa Hutton against Rosa Ward, executrix, etc. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*W. B. Maxwell* and *Arnold & O'Connor,* and *W. E. R. Byrne,* for plaintiff in error.

*H. G. Kump,* for defendant in error.

MILLER, JUDGE:

Plaintiff brought this action in assumpsit to recover of defendant the value of certain timber which by authority of her intestate was cut and removed from a portion of two tracts of land in Randolph County comprising some 440 acres, and which she alleges now belongs to her. The defendant denies that the particular part of the land from which the timber was admittedly taken is plaintiff's land, but that on the contrary it belongs to the estate of her deceased husband. Whether it belongs to the plaintiff or to the estate of the late Wirt C. Ward depends on the true location of the lines and corners of two tracts of land allotted and partitioned to Dorothy Hutton in 1856, out of the landed estate of her late father, Adam See, and particularly the southern and eastern lines of the first of said tracts, designated as the bottom land, and containing 160 acres, and also the location, with reference to the first, of the second tract designated as the out land, containing according to the decree of partition, about 100 acres, from portions of which two tracts the timber in question was removed, if they are located according to plaintiff's contention. According to the decree of partition, the two tracts are bounded as follows: The first: "Beginning at a beech, formerly a corner to Jonathan Hutton, deceased, and a corner of John A. Hutton, thence S.

50 W. 122 poles to a stake on the turnpike road, thence S. 34 E. 64 poles, to a stake by the run near the turnpike road, and near an Elm tree, thence S. 63½ E. 77 poles to a beech, thence east 200 poles to the Raguet land, thence north with a line of the same, 30 poles, thence N. 79 W. 30. poles to two white oaks, N. 40 W. 76 poles to a white oak and gum, N. 74 W. 56 poles, S. 45 W. 14 poles, N. 40 W. 46 poles to a white oak, N. 18 W. 60 poles to the beginning, containing one hundred and sixty acres.   Also another tract adjoining the above containing about one hundred acres, being part of the Raguet land and bounded as follows:  Beginning at the southeast corner of her one hundred and sixty acre tract above described and a corner of lands assigned to Mary Jane Mathews, wife of Andrew G. Mathews, thence south 34 poles, S. 59 E. to Riffles run, thence up said run to land of said John A. Hutton, thence N. 59 W. to a beech and maple, thence N. 79 W. 20 poles to a corner of her 160 acre tract above described, thence with a line of the same 30 poles to the beginning.''   The southern line of the first tract so involved in the contention of the parties is the fourth one called for and begins at the beech at the end of the line S. 63½ E. 77 poles, *thence east 200 poles to the Raguet land.*   The location of the Raguet land called for is not controverted.

Quite a contest is made over the true location of the beech and maple called for in a deed between Jonathan Hutton and Adam See, of February 25, 1837, with reference to which the parties thereto undertook to settle a line of division of a certain tract of land held by them, and wherein it was agreed that the said line should begin at a white oak, maple and beech in the fork of a run supposed to be on or near the poplar corner of John Crouch, thence S. 59 E. until it strikes the left hand fork of Riffles run, thence down said run till it strikes the south line of the survey, thence N. 63 W. till it strikes the Adam See's home land.

Plaintiff claims that the maple and beech are in the forks of the run as located at the letter ''D'' on the trial map, the defendant that they are properly located as indicated by the figure ''23'' on said map, and some 60 or 70 poles north of

the letter "D;" an if so the northern line of the 100 acres
allotted to Dorothy Hutton would be a line run from "23," N.
54 W. 314 poles to figure "33" on the map, instead of the
same course and distance from the letter "D" as plaintiff
contends. If the southern line of the Jonathan Hutton, now
John A. Hutton land, called for in the deed between Hutton
and See, of February 25, 1837, and in the decree of partition
of 1856, describing the tracts allotted to Dorothy Hutton,
begins at "23," and not at the letter "D," and the line from
the beech East 200 poles, describing the 160 acre tract, is
located according to the calls in the decrees, the timber in
controversy was not on the land of plaintiff, otherwise it
was on the land allotted to Dorothy Hutton, as claimed by
her. The location of the beech, the beginning of the 200
pole line, at the letter "P" on the trial map, is agreed upon;
and it is agreed that it is a common corner to the 160 acres
allotted to Dorothy Hutton, and the 168 acres allotted to
Mary Jane Mathews, and that the line from this corner East
200 poles, when correctly located, is the dividing line between
plaintiff's land and the tract of 168 acres south of it so
allotted to Mary Jane Mathews by said partition decree, and
now owned by defendant. The plaintiff claims that the line
called for as running due east from the point "P" 200 poles
to the Raguet land shown on the map, was a mistake in the
description of the Dorothy Hutton allotment, and that prop-
erly run to carry out the intention of the parties, it would
necessarily have to be about S. 67° 40′ E. 210 poles to the
Raguet land, and that when thus run and a line from the
end thereof north with the Raguet line as indicated on the
plat, the two tracts allotted to Dorothy Hutton would prop-
erly be located, the 100 acres of out land being between
parallel lines running S. 59 E. to Riffles run. It is shown,
however, that there is no corner at the end of the 210 pole
line, and no one testifies to any corner at that point. It is
conceded also that if the line "east 200 poles" were cor-
rected to S. 67° 40′ E. 210 poles, and the lines and corners
of the other tracts allotted in said partition adjusted with
reference thereto, great disarrangement in lines and corners

would occur among the owners of the other lots and subdivisions thereof.

There was an order of survey in the case; and the surveyor went upon the ground with the parties and ran the lines and designed them on his plat as they were claimed by the parties; and the testimony of other surveyors who had at different times done work on the ground was taken, and they were examined with reference to lines and corners found and pointed out to them as the original lines and corners of the partitioned and adjoining tracts; and the evidence of ancient witnesses still living, and who seem to have been more or less acquainted with some of the lines and corners, was taken; all to the end of determining the true location of the lands claimed by the parties respectively; and the facts in reference thereto were all submitted to the jury on instructions which seem to propound the law correctly; and thereon the jury found for the defendant. Wherefore, we must conclude that in the main they found the lines and corners to be truly located as claimed by the defendant; and we can not say from the evidence that their verdict was not warranted by the evidence.

The first point of error relied on is the denial of plaintiff's motion to set aside the verdict and award her a new trial. This point is already answered by what we have said on the facts in the case. It would be impossible for us to find from the evidence that the Dorothy Hutton tracts were in fact originally located as plaintiff claims; and if there was a mistake in the partition in 1856, that mistake should have been corrected in a court of equity, by suit brought in time. Freeman on Cotenancy & Partition (2nd. ed.), sec. 534; 30 Cyc. p. 304; 38 Amer. Dig. (Cent. Ed.) p. 322, §306, where decisions from many states are cited and digested. In one of these cases, *Fisher* v. *Hershey,* 78 N. Y. 387, Rapallo, J. says: "They may relieve against mere mistakes, accidents or hardships, or oppressive conduct of others," etc. And in the same paragraph the court further says: "In such cases the rights of third parties are duly regarded, and proper terms imposed; but where only the rights of the par-

ties to the action are involved, very few cases can be supposed in which an order granting a re-sale is reviewable in this court." In *DeWitt* v. *Hawkins*, 107 Ill. 109, it is held that: "Granting such relief is in no sense changing the original decree of partition. It is simply correcting an omission or mistake." In *Guedici* v. *Boots*, 42 Cal. 452, it was decided that: "where a partition agreement fixed upon a certain line as dividing off the interest of one of the parties, but in carrying out the agreement a mistake was made in running the line so as to cut a portion of the land it was agreed he should have, and the mistake was carried unto the partition deeds, and not discovered until afterwards, that the proceeding did not, under the circumstances, become a 'finality,' but that the party was entitled to relief in equity." We make these observations simply to show that equity and not a court of law is the place to correct mistakes in partition. The facts and circumstances of this case do not warrant us, by the process of interpretation, to hold that the description of the lines and corners in the decree of partition was a mistake and should be treated as in fact located where plaintiff claims they ought to have been.

The next assignment of error is that the trial court should have given to the jury plaintiff's instructions numbers one (1) and four (4) as requested, instead of modifying them. These instructions as modified seem to contain substantially the same propositions as the original; and as nothing is pointed out in argument against them, we think this point deserves no further consideration.

The court also gave, at the instance of plaintiff, her instructions numbers two (2), three (3), five (5), six (6) and seven (7), covering together with numbers one (1) and four (4), every point and phase of plaintiff's case, and thereby fairly submitting to the jury on the several theories the finding of the facts which the evidence therein tended to establish.

The giving of defendant's instructions numbers three (3) and five (5) is next relied on for reversal. Number three (3) is as follows: "The court instructs the jury that if they believe from the evidence that the lands of Adam See

were located and partitioned among his heirs as shown upon the map made by Deputy Surveyor James Coberly and exhibited by the plaintiff as Exhibit No. 34 with the testimony of James Coberly, that then the plaintiff can not shift the lots and partition of said Adam See lands, to the location claimed by the plaintiff as shown upon the trial map and in red lines placed upon said James Coberly map during the course of the trial, and the jury should find for the defendant.''

The criticism of this instruction is that it erroneously assumes; first, that a partition map was originally made by the surveyor; and, second, that if such map was in fact made, it controls the identified corners on the ground, and the identified places where corners have previously stood. As we understand the evidence there is nothing in it justifying the first complaint. A map made by surveyor Coberly was introduced in connection with his evidence, as Exhibit No. 34, not as the original or a copy of any map made at the time of the partition of the See lands in 1856, but as a map made by him according to the calls in the original decree of partition. There was evidence by surveyor Lewis that in 1874 or 1875, in partitioning the lands of Washington G. Ward between his two sons, he had occasion to run some of the lines of the Adam See land, and that he had then before him the partition plat signed by David Goff and B. L. Brown, the one filed in the partition suit. During the trial, surveyor Coberly, on request, was permitted by red lines drawn on his plat to illustrate how the lines and corners of the respective lots would have to be shifted from the lines and corners located according to the description in the partition decree, if the 200 pole line from the beech at ''P'' on the trial map was located according to plaintiff's contention. We see nothing prejudicial to plaintiff's interests in this instruction. Besides, the jury were told by the plaintiff's instructions that if they believed from the evidence that a mistake was made by the commissioners in partitioning the Adam See land, and that the John A. Hutton corners are located as claimed by plaintiff, then they should find for plaintiff. In view of what

we have said about the forum in which mistakes in partition may be corrected, plaintiff's instructions on this subject were very liberal. Evidently the jury did not believe that the lines and corners of the John A. Hutton land called for in the partition decree were located as claimed by plaintiff, else they would have found for her as told by her instructions. If we could say *as matter of law* that the finding of the jury was clearly contrary to the evidence, and that beyond doubt the lines and corners of the John A. Hutton 130 acre tract called for in the decree of partition are located according to plaintiff's contention, we might be controlled as to the line "east 200 poles" from the corner at "P" on the trial map by such decisions as *State* v. *Herold*, 76 W. Va. 537; *Vandall* v. *Casto*, 81 W. Va. 76; *Lewis* v. *Yates*, 62 W. Va. 575, and other cases cited. For it is the law that a plainly erroneous call may be rejected for the purpose of effectuating the obvious intention of the parties to a deed or partition decree, and that known and established boundaries of an adjoining tract when called for become of themselves as fixed as any other kind of a monument, and should be adhered to rather than less permanent or inconsistent objects. But we have no such certainty in the location of lines and corners of the said Hutton tract. True, there is much evidence tending to show that the beech and maple at "D" on the trial map were seen by at least one witness, Warwick Hutton. He is the son of Dorothy Hutton and a brother of plaintiff; and he swears that he saw standing the timber called for in the Hutton deeds of 1837, at the points "F," "G," "H," and "I" perhaps. The beech and the maple along with the white oak are called for in the deed of February 25, 1837, the one in which Adam See and Jonathan Hutton undertook to settle the division line of a tract held by them as located in the "forks of a run," supposed to be near where a poplar corner to Crouch stood. This witness says: "I saw the maple there, and think the oak or beech one, when I was a boy. The last time I saw it there was nothing but a maple there." And in response to questions he further said: Q. "Is that there now?" A. "No, sir." This witness was with Purkey, the

official surveyor, when executing the order of survey in this case, and as shown on cross-examination, when undertaking to point out some of the corners and lines of the John A. Hutton land, and particularly the white oak and gum at "H" on the trial map, he at first located them on entirely a different ridge from the one on which he afterwards and now claims they stood. Surveyor Purkey found nothing at "H," though he says it was in the woods. At "G" where two white oaks are called for, he found no marked timber; there were two white oak stumps there; but he says they were quite small. At the letter "A" in the forks of the run, he found a maple and an old beech stump; at "F," where a black oak and white oak are called for in the partition decree, he found stumps of timber of that character about there. The place was in woods. He swears that on the 200 pole line, he found marked timber counting back 47 years, and that from 4 to 7 poles south of the line run from "D" to "f," claimed as the northern boundary of the Dorothy Hutton 100 acres out land, on a line from figures "2" to "34" on the map, he found marked timber counting back 47 years, but found no marked timber on the line from "D" to "f." There would seem to be some connection in time between the markings of the timber on the lines "P" to "I" and "2" to "34," each counting 47 years. These markings, however, could have had no connection in time with the original partition of the Adam See lands in 1856 for if so the annulations should have counted back about 67 years. The markings of the timber on these two lines is probably to be referred to surveys made by Jacob Hill, surveyor, or Surveyor Lewis, at the instance of Warwick Hutton about 1874 or 1875. And if so, Hutton then regarded the 200 pole line east from the beech at "P" as the southern line of the Dorothy Hutton tract. There are several established corners and lines of the tracts allotted by the decree of partition of 1856 to Rachel McNeil and Hannah Harper, and when the tracts allotted to them were run out by surveyor Purkey according to the calls in the decree, they were found located on the ground practically exactly as shown on his plat and the plat of surveyor

Coberly, Exhibit No. 34; and to follow the calls in that decree respecting the tracts allotted to Mary Jane Mathews and Margaret W. Long, controlled by the known and established corners therof, there can be no doubt that in making the partition in 1856, the tracts so laid down were actually set off to these partitioners. And that those claiming under Dorothy Hutton recognized for many years the line ''P'' to ''I'' as the southern line of the 160 acre tract of bottom land assigned to her, there can be little doubt. The troublesome question about the whole controversy has been the fact that by locating the several tracts according to the partition decree, Dorothy Hutton seems to be practically squeezed out of all her out land except the narrow strip indicated between the lines ''D'' to ''f'' and ''2'' to ''34'' on the trial map, or about 14 acres and 50 poles. But to correct the mistake, if one was made, it is apparent that it would call for an entirely new alignment of all the lots so as to do justice between the partitioners. Surveyor Purkey says that there was enough of the out land to give the partitioners their just proportion thereof when laid off on the base line by the surveyor making the partition. Conceding that there was a mistake, how can it be corrected? Certainly not in a suit of assumpsit such as this. Ward no doubt was acting in good faith in making a sale of the timber in question. He believed, no doubt, that the timber was on his land. There was a decided dispute as to the true location of the division lines; and while the parties were claiming the same title, they were in controversy over the location of the division lines, and defendant contends that such a controversy can not be settled in an action of assumpsit. But if correct in this, the plaintiff has proceeded in such a suit and has lost, and defendant can not complain of the character of the suit, having prevailed in the one she was called upon to defend.

Defendant's instruction number five was as follows: ''The court further instructs the jury that where known monuments and marked corners are called for in title papers to land and courses and distance running to and from such monuments and marked corners, are given as bounding the land therein conveyed, or ascertained, then such monuments,

marked corners and courses and distances, must govern the location of such land and the acreage called for will not be looked to for that purpose.''

It is admitted that generally this instruction contains a correct legal proposition, but the position of plaintiff's counsel is that it is inapplicable to a deed or decree of partition, when the question is, what was the intention of the parties. If only the true location of the 200 pole line was involved, and it clearly appeared that that call was a mistake, and the plain intention was a line S. 67° 40' E. 210 poles, of course the mistaken line might be disregarded, and in that event the acreage called for might have some influence in determining the question of intention. The question here involved concerns all the parties, and if corrected, it should be corrected as to all, if this can be equitably done after the mistake was discovered. *Vandall* v. *Casto, supra.*

Our conclusion is to affirm the judgment.

*Affirmed.*